**In re John & Dorothy MELVIN, Debtors.**

**John & Dorothy MELVIN, Plaintiffs,**

v.

**BENEFICIAL CONSUMER DISCOUNT CO.**

Bankruptcy No. 85–05539S.
Adv. No. 87–0020S.

United States Bankruptcy Court,
E.D. Pennsylvania.

July 22, 1987.

Michal Fox, Philadelphia, Pa., for debtors.

Robert B. Hill, Petersburg, Va., for Beneficial Consumer Discount Co./defendant.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION AND PROCEDURAL HISTORY

The instant case presents a reprise of almost exactly the same factual and legal

issues which we recently considered in that portion of our Opinion in *In re Tucker, Tucker v. Mid-Penn Consumer Discount Co.*, 74 B.R. 923, 928–34, (Bankr.E.D.Pa., 1987), addressing violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, et seq. (hereinafter referred to as "TILA"), and the right of borrowers to rescind a transaction secured by the borrowers' principal dwelling provided under the TILA. Although neither party cites to or was apparently aware of the *Tucker* decision and several arguments not raised in *Tucker* are presented by the Defendant, we believe that none of them shakes the accuracy of our reasoning in *Tucker* on the pertinent issues. We therefore hold, as we did in *Tucker*, that the Debtors are entitled to rescind the final transaction between the parties of January 24, 1984. Consequently, the Debtors are entitled to termination of the security interest against their premises, elimination of finance charges imposed in the transaction, a recoupment claim against the Defendant arising out of the last transaction, and a $1,000.00 award of damages in light of the Defendant's failure to properly respond to a valid rescission request. However, we deny any recoupment claims based on any of the parties' transactions prior to the January 24, 1984, transaction.

The Debtors, husband and wife, filed a joint bankruptcy petition under Chapter 13 of the Bankruptcy Code on December 26, 1985. On January 13, 1987, they commenced this Adversary proceeding against BENEFICIAL CONSUMER DISCOUNT COMPANY (hereinafter referred to as "the Lender"), and, on March 25, 1987, they filed an Amended Complaint Objecting to Secured Claim of the Lender in this action. The Defendant answered the Amended Complaint on April 28, 1987, and the matter came before us for trial on April 30, 987. At that time, the parties presented us with a Stipulation which they agreed would constitute the record, and we entered an Order, dated May 1, 1987, which allowed the parties to file their Briefs on June 1, 1987, and June 29, 1987, respectively. The parties substantially complied with this Order, although we did not receive the Defendant's Brief until July 6, 1987.

## B.  PERTINENT FACTS

The facts present a similar, but less dramatically unconscionable sequence of serial loan transactions, than did the *Tucker* case. Because our ultimate decision focuses solely upon the last transaction consummated on January 24, 1984, we need give less prominence to the history of the parties' dealings than we did in *Tucker*, and thus we describe those dealings in less detail than we did in *Tucker*.

The initial loan between the parties which is focused upon by counsel, incurred on August 2, 1976, was itself apparently a refinancing of a previous loan with a net balance of $1,184.69, in which the Debtors received a net sum of $1,006.24 in new money. The disclosed Amount Financed in the transaction was $2,720.28, and, with the addition of "discount interest" and the "service charge" authorized by the Pennsylvania Consumer Discount Company Act, 7 P.S. § 6201, et seq. (referred to hereinafter as "the CDCA"), resulted in total payments of $4,176.00, to be made in forty-eight (48) monthly payments of $87.00 at an annual percentage rate (hereinafter referred to as "APR") of 22.87 percent. This loan was secured by a mortgage on the Debtors' residential real estate situated at 1854 East Clementine Street, Philadelphia, Pennsylvania 19134, which they had purchased about a month prior to this loan.

The second transaction in the sequence was effected on February 9, 1978. The net balance of the account at that time was $2,104.95, and the Debtors received an additional $1,506.13 when they made this loan. The Amount Financed in this transaction was $4,229.40 and, with the addition of "discount interest" and the "service charge," the total of payments was $6,480.00, payable in forty-eight (48) installments of $135.00 monthly, with an APR of 22.76 percent. This loan was secured by the previous mortgage on the residence in the amount of $4,176.00 taken in the 1976 loan, and all of the Debtors' household goods. No new mortgage was executed.

The third transaction took place on March 17, 1982. The net unpaid balance

from the prior loan was at that time $1,380.44, and the Debtors received $2,269.59 in additional funds. The Amount Financed was precisely the same as in the last loan, i.e., $4,229.40, and all of the other payment terms were also the same. Although the 1976 mortgage in the amount of $4,126.00 was not satisfied and remained as security, the Defendant also took a new mortgage in the amount of $6,480.00 against the Debtors' premises, plus a security interest in all of the Debtors' household goods and their 1974 Buick automobile, as security in this transaction.

The crucial fourth and last transaction took place on January 24, 1984. In that transaction, the net unpaid balance from the prior loan was $2,916.37, and the Debtors received $1,196.45 in new money. The Amount Financed was $4,469.60 and, after the addition of the "discount interest" and the "service charge," the total of payments was $8,160.00, payable in sixty installments of $136.00 monthly, an APR of 26.82 percent.

It is important to examine the security taken and the Notice of Right to Cancel, given in purported compliance with 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, in this last transaction. The Defendant took a new mortgage in the amount of $8,160.00, as well as security interests in the Debtors' household goods and 1974 Buick, to secure this transaction. However, unlike its method of operation in the 1978 transaction and the 1982 transaction, the Lender satisfied the mortgage taken in the previous (1982) transaction on April 4, 1984. We also note that the 1976 mortgage was satisfied on July 5, 1983. Therefore, the 1984 mortgage was the only security interest remaining in the Debtors' realty in this transaction subsequent to April 4, 1984.

Because security in the Debtors' residence was taken by the Lender, it was necessary for a Notice of Right to Cancel to be given, as in the prior transactions. However, we need focus only on the Notice of Right to Cancel in this transaction, which includes the following language:

If I cancel the transaction, my cancellation will apply only to any increase in the amount of credit. It will not affect the amount that I presently owe or the lien on my home which you already have obtained. If I cancel, the lien, so far as it applies in any increased amount, is also cancelled. Within 20 calendar days after you receive a notice of a Statement of Cancellation of the new transaction, you must also return to me any money I have given to you or anyone else in connection with the new transaction.

The parties agree that this form tracks the language of Appendix H–9 to Regulation Z, 12 C.F.R., Part 226, Rescission Model Form (Refinancing).

While the parties' course of dealing throughout these four transactions perhaps does not justify the pejorative designation of "flipping," as did the *Tucker* facts, 74 B.R. at 926–27, we do note the effect of the course of dealings was to keep the Debtors paying about $135.00 monthly from 1978 through 1989. We suspect that this effect resulted from strategic solicitation of the Debtors by the Lender to accomplish this end.

On January 12, 1987, the Debtors, by their counsel, purported to rescind the January 24, 1984, transaction, which was a few days before the three-year period in which they could do so ran out. *See* 15 U.S.C. § 1640(f). There was no indication of any affirmative response to the rescission request in this letter by the Lender, and, therefore, like the Lender in *Tucker*, the Lender here decided to take its chances that it could prevail in any legal action challenging its failure to recognize the Debtors' attempt at recission. Such a choice, as the decisions in *Tucker* and this case point out, can result in rather severe consequences to the Lender if it is mistaken.

C. THE DEBTORS' RESCISSION OF THE JANUARY 24, 1984, LOAN WAS VALID

Our analysis begins, as it did in *Tucker*, with recitation of the applicable portions of the TILA and Regulations, 15

U.S.C. §§ 1635(a) and (b), and 12 C.F.R. §§ 226.23(a) and (b), respectively:

SECTION 125—Right of Rescission as to Certain Transactions

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom the credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or any other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property of the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

.    .    .    .    .

SECTION 226.23—Right of Rescission

(a) Consumer's right to rescind....

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the act....

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, des-

ignating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires....

As in *Tucker*, our focus is upon whether the Lender has complied with 12 C.F.R. §§ 226.23(b)(1) and (b)(4). Contrary to the Lender's contention, it is clear, per § 226.-23(a), that delivery of *both* the notice required by § 226.23(b) *and* delivery of all material disclosures in the disclosure statement, "whichever occurs last," will extend the right to rescind for the maximum three-year period set forth in 15 U.S.C. § 1635(f), prior to which deadline the Debtors acted. And, as in *Tucker*, we find the Notice of Right to Cancel form to be violative of both §§ 226.23(b)(1) and (b)(4). Rather than paraphrase, we quote from page 931 of *Tucker* as follows:

The Lender's violation of 12 C.F.R. § 226.23(b)(1) is, in itself, a "material violation" sufficient to trigger the rescission right. However, we also believe that, especially when we compare the facts and reasoning of the Lender here to those in an earlier case in which we rendered summary judgment in favor of this same Lender without opinion, *In re Matzulis, Matzulis v. Mid-PennConsumer Discount Co.*, 74 B.R. 552, (Bankr.E.D.Pa., 1987), the Lender has violated 12 C.F.R. § 226.23(b)(4) as well.

In *Matzulis*, the Lender, in rewriting a loan transaction, satisfied a mortgage previously taken against the borrower, and provided the borrower with a form consonant with the Rescission Model Form (General), 12 C.F.R., Appendix H–8. The borrower in *Matzulis* argued that, since the transaction was a refinancing of a previous loan, the Lender was obliged to provide him with the Rescission Model Form (Refinancing), 12 C.F.R., Appendix H–9. There, the Lender argued, that having satisfied the mortgage taken in the previous loan and having caste the new transaction in the form of an entirely new loan, as opposed to a refinancing or consolidation within the scope of 12 C.F.R. § 226.23(f)(2), it had accorded the borrower a revived right to rescind the entire transaction and thus properly presented the borrower with the H–8 Form rather than the H–9 Form.

We agreed with the Lender's position in *Matzulis*. We noted at that time that the Lender's concession that its casting the new transaction as an entirely new loan gave the Borrower a right to rescind the entire transaction was consistent with the well-reasoned result of the only reported case known to us on point, *Mutual Life Insurance Co. v. Bernasek*, 235 Kan. 726, 682 P.2d 667, 671 (1984).

Here, as in *Tucker*, the Defendant stated, in the Notice, that there was a "lien on [the Debtors'] home which [the Lender] previously obtained." Although mention is made that security has been taken in the form of a mortgage, it is far from "clearly and conspicuously" disclosed that the Lender had, at that time, any new mortgage, or that it had, as in fact it did at that time, *two* mortgages, totalling $12,336.00, against the Debtors' residence as security. Also, we note that, on April 4, 1984, the Lender satisfied the 1982 mortgage and there is no doubt that the new loan, contrary to the Notice, *did* "affect" the retention of the lien which the Lender already had on the Debtors' home. Thus, § 226.-23(b)(1) was violated by the Notice.

Similarly, as we held in *Tucker*, we do not believe that it is accurate to state that, when a prior loan is refinanced such that a new mortgage for the entire amount of the new, refinanced loan is taken, the borrowers can cancell or rescind only as to any "increase in the amount of credit." In fact, they can rescind the entire new loan. Therefore, the Notice's recitation to the contrary is not in accordance with § 226.-23(b)(4).

The Lender offers several responses which are distinct from those tendered by the Lender in *Tucker*. The *Tucker* Lender was hemmed in by its successful defense in *Matzulis, supra*, in which it had argued that it accurately provided a rescission notice consistent with Appendix H–8 to Regulation Z, 12 C.F.R., Rescission Model Form

(General), when it re-wrote a previous loan and took, as security, an entirely new mortgage, satisfying the mortgage taken to secure the previous loan when it did so. Unfortunately for the Lender here, the Lender in *Matzulis* convinced us that it was correct.[1]

Thus, although we find that the Lender's form was a quite acceptable facsimile of Appendix Form H–9, we hold that, in the fact situation where a previous loan was rewritten, a new loan is secured by a new mortgage in the amount of the total loan, and the mortgage securing the previous loan is satisfied, the Lender is obliged to use a form in compliance with Appendix Form H–8. Use of an *incorrect* model form is certainly not protected by 15 U.S.C. § 1604(b), which protects lenders who utilize model forms correctly, thus rebutting the Lender's first line of defense.

The Lender's second defense is invocation of the Official Staff Commentary of the Federal Reserve Board appearing at § 226.23(f)(4), which reads as follows:

> 4. New advances. The exemption in section 226.23(f)(2) applies only to refinancings or consolidations by the original creditor. If the transaction involves the advance of new money, then only the amount of the new money is rescindable. For example, if the sum of the outstanding principal balance plus the earned finance charge is $1,000 and the new amount financed is $1,000, then the refinancing would be exempt. On the other hand, if the new amount financed exceeds $1,000, then the amount in excess of that $1,000 would be rescindable. A model rescission notice applicable to transactions involving new money appears in appendix H.

The difficulty with the Lender's position is that the instant transaction is *not* a "refinancing," as defined in 12 C.F.R. § 226.23(f)(2), which transactions the Commentary states are the *only* ones to which § 226.23(f)(4) refers. This Regulation provides as follows:

(f) Exempt transaction. The right to rescind does not apply to the following:

. . . . .

(2) A refinancing or consolidation by the same creditor of an extension of credit *already secured by the consumer's principal dwelling.* If the new amount financed exceeds the unpaid principal balance plus any earned unpaid finance charge on the existing debt, this exemption applies only to the existing debt and its security interest (emphasis added).

The instant transaction was *not* an "extension of credit already secured by the consumer's principal dwelling." Rather, it was a transaction initially secured by a new mortgage *in addition to* the previous mortgage and ultimately secured by the new mortgage *only.* Furthermore, the new mortgage was in a different amount than the mortgage already of record prior to the new transaction.

The history of the parties' dealings indicates that, in the past, the Lender *had* handled transactions with the Debtors in the manner necessary to bring the transaction within the scope of 12 C.F.R. § 226.-23(f)(2). The 1978 transaction, in which the 1976 mortgage was kept in place to secure the new refinanced transaction, and no new mortgage was taken, was handled in precisely this fashion. However, the 1984 transaction, crucial to the case at all, for some inexplicable reason, was handled differently.

We therefore conclude, as we did in *Tucker,* that the Debtors are entitled to rescind the January 24, 1984, transaction, and that their counsel's letter of January 12, 1987, was effective to do so.

## D. THE CONSEQUENCES OF THE VALID RESCISSION

### 1. THE DEBTORS ARE ENTITLED TO THE FULL PANOPLY OF RELIEF SOUGHT ARISING FROM THE JANUARY 24, 1984, TRANSACTION.

█ The issue of the appropriate remedies to be awarded to the Debtors as a

---

**1.** We note that, the Lender in *Matzulis* was the same Lender as that in *Tucker,* and counsel for

the *Debtor* in *Matzulis* is the same counsel as that for the Debtors here.

result of their effecting a valid rescission, which the Lender failed to acknowledge in appropriate fashion, is also spelled out rather clearly in 15 U.S.C. § 1635(b) and our Opinion in *Tucker*, at 932–34. As we stated in *Tucker:*

> The first sentence of 15 U.S.C. § 1635(b) provides that, by operation of law and irrespective of any response to the Debtor's valid rescission by the Lender, two consequences ensue. One is the voiding of the security interest given by the obligor.... *See, also, e.g., In re Chancy*, 33 B.R. 355, 356–57 (Bankr.N.D. Okla.1983); *In re Piercy*, 18 B.R. 1004, 1007–08 (Bankr.W.D.Ky.1982); and *In re Wright*, 11 B.R. 590, 595 (Bankr.S.D. Miss.1981).
>
> The second consequence is to eliminate the liability of *both* borrowers, *see* 12 C.F.R. § 226.23(a)(4), to pay "finance or other charges" in the transaction.... *Tucker, supra,* at 932.

The third consequence, the potential recoupment damages, we shall discuss in more detail at pages 959–60 *infra*. However, *Tucker* also sets forth a fourth consequence:

> Finally, it is well-established that the Debtor is entitled to payment of a $1,000.00 statutory penalty in light of the Lender's violation of the TILA in failing to properly respond to the rescission demand, apart from her right to recoupment of $1,000.00 for the disclosure violation for which an affirmative suit is time-barred. *See, e.g., Aquino v. Public Finance Consumer Discount Co.,* 606 F.Supp. 504, 509–11 (E.D.Pa.1985); *Bookhart [v. Mid-Penn Consumer Discount Co.],* 559 F.Supp. [208, 211 (E.D. Pa.1983)]; *Reid v. Liberty Consumer Discount Co.,* 484 F.Supp. 435, 441 (E.D. Pa.1980); and *In re Wright, supra,* 11 B.R. at 595. Since there is no "secured debt" remaining in light of the invalidation of the Lender's ... mortgage ..., we believe that it is most consistent with the policy of the TILA to direct that this sum be remitted by the Lender to the Debtor, or on her account, rather than set off against the remaining balance of the Lender's unsecured debt. *See*

*Griggs v. Provident Consumer Discount Co.,* 680 F.2d 927, 932–33 (3d Cir. 1982); and *In re Jablonski,* 70 B.R. 381, 390 (Bankr.E.D.Pa.1987). We shall therefore order that this sum be paid to the Trustee, and for the Trustee to remit this sum to the Debtor if it is clear that these funds are exempt. *Id.,* at 932.

It is rather easy to apply these principles in ascertaining the first, second, and fourth consequences of the Debtors' valid rescission of the January 28, 1984, loan. The Lender's security interest in the Debtor's residence must be satisfied. The Lender appears to suggest that somehow the 1982 mortgage should be rewakened if rescission is authorized. We disagree, principally because of our analysis that the 1984 transaction was written as an entirely new transaction, and the mortgages given in the prior transactions were satisfied rather than retained. We also note that, having been permanently "put to sleep" by their satisfaction, these mortgages could not be legally rewakened in any event.

The second consequence causes us to reduce the Lender's claim to the difference between the net sum received by the Debtors and the payments made by the Debtors, as we did in *Tucker*. *See* at 932. We agree with the Debtors that the sum received by the Debtors was $4,112.82, which includes the pay-off on the 1982 loan plus the new money received from the Lender in the January 24, 1984, transaction, but not the insurance charges of $356.78 which also are included to make up the Amount Financed of $4,469.60. The parties stipulated that the Debtors made payments totalling $2,494.60 towards this loan. The Lender's Claim is therefore reduced to $4,112.82 less $2,494.60, or $1,618.22.

The fourth consequence, the statutory penalty for failing to properly acknowledge the Debtors' valid rescission results, as in *Tucker,* is an additional $1,000.00 penalty. As in that case, we will direct that this sum be paid to the Trustee, and passed on to the Debtors only if and when the Trustee is able to determine that this recovery would be exempt property.

■ The third consequence, i.e., the Debtors' potential recoupment claims, raises several difficult issues. The Debtors allege three separate violations of the TILA in the disclosure statement: (1) A failure to provide a proper right to rescind; (2) A failure to properly adjust the "amount financed" by deducting therefrom the "prepaid finance charge;" and (3) A failure to properly disclose the security interest taken in the transaction.

We have already found that the Lender violated 15 U.S.C. § 1635(a) and the Regulations pertinent thereto appearing at 12 C.F.R. §§ 226.23(b)(1) and (b)(4) in determining that the Debtors have a right to rescind the transaction. See pages 954–57 *supra*. Such a violation gives the Debtors a right to a valid $1,000.00 recoupment claim for statutory damages. 15 U.S.C. §§ 1640(a)(3), (a)(2)(A)(i). *See Tucker, supra*, at 932; *In re Martin*, 72 B.R. 126, 127–29 (Bankr.E.D.Pa.1987); and *In re Johnson-Allen*, 67 B.R. 968, 972 (Bankr.E.D.Pa.1986). Since multiple failures to disclose will not give rise to any additional penalties, 15 U.S.C. § 1640(g), it is not necessary for us to consider the other, far more doubtful alleged violations of the TILA alleged by the Debtors in the 1984 transaction. Therefore, the Debtors are able to reduce the Lender's Claim to an unsecured claim of $618.00.

2. THE DEBTORS ARE NOT ENTITLED TO ANY RECOUPMENT PENALTIES ARISING FROM THE 1976, 1978, OR 1982 TRANSACTIONS

Although these consequences appear rather severe in themselves, the Debtors ask us to do more. They ask us to review alleged TILA violations in the 1982, the 1978, and the 1976 transactions and reduce the Lender's Claim further by recoupment claims arising from alleged TILA violations in those transactions. The Lender counters with a contention that the nature of recoupment bars its application to the prior transactions. The Lender overstates its case by erroneously claiming that none of the cases cited by the Debtors permit such use of recoupment to other than the last in a series of refinancing transactions, as the courts in *Trustees Loan & Discount Co. v. Carswell*, 435 So.2d 114, 117 (Ala.Civ.App. 1983); and *Wise Furniture v. Dehring*, 343 N.W.2d 26, 30 (Minn.1984), did precisely what the Debtors request that we do here.[2] However, our independent analysis regarding the nature of recoupment leads us to decide this very close question in favor of the Lender and against the Debtors.

The leading Pennsylvania case regarding the application of the doctrine of recoupment to the defensive invocation of the TILA as applied to contracts pre-dating the one-year limitation period for instituting affirmative TILA actions is *Household Consumer Discount Co. v. Vespaziani*, 490 Pa. 209, 415 A.2d 689 (1980). In that case, the Pennsylvania Supreme Court applied the federal common law of recoupment as stated in such cases as *Rothensies v. Electric Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946); and *Bull v. United States*, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). 490 Pa. at 217–19, 415 A.2d at 693–94. As *Rothensies* makes clear, recoupment is applied "only to permit a transaction which is made the subject of suit by a plaintiff to be examined." 329 U.S. at 299, 67 S.Ct. at 272. Thus, there, recoupment of claims from one tax year was not permitted against claims relating to another tax year.

Recoupment has thus been traditionally applied narrowly, and is restricted to the precise same transaction in which the claim is made. *See, e.g., Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984); *Westinghouse Elec. Corp. v. Fidelity & Deposit Co. of*

---

**2.** The Lender is correct in asserting that such cases as *Brown v. Marquette Savings & Loan*, 686 F.2d 608, 615–16 (7th Cir.1982); *Dennis v. Handley*, 453 F.Supp. 833, 835 (N.D.Ala.1978); and *Blackmond v. Walker-Thomas Furniture Co.*, 428 F.Supp. 344, 346 (D.D.C.1977), are of very little pertinence, because these cases involved multiple transactions all occurring within the one-year statutory period set forth in 15 U.S.C. § 1640(e), and not, as here, claims for recoupment arising from transactions beyond the one-year period.

*Maryland,* 63 B.R. 18, 21 (E.D.Pa.1986); and 20 AM.JUR.2d 228, 231, 235–36 (1969).

The Lender's Proof of Claim against which recoupment is sought arises only from the 1984 loan. This is especially so in light of our analysis that the 1984 transaction is an entirely new transaction rather than a refinancing which merely added to the amount of credit provided in a prior transaction, which is the touchstone of our analysis that confirmed the validity of the Debtors' rescission of the transactions.[3] The Debtors are entitled only to a recoupment claim against the Lender's Proof of Claim. The earlier transactions, in our view, are not the basis of the Proof of Claim, but, rather, only the 1984 transaction is. Therefore, it is inappropriate for the Debtors to attempt to assert a right of recoupment arising from these earlier transactions, much the same as it was improper for the taxpayer in *Rothensies* to attempt to assert a recoupment defense arising from different tax years than the one in question.

We note that this result is consistent with the result reached in *Tucker,* at 932, where we limited recoupment to the last transaction. We do concede that, there, we based our decision solely on the fact that the Debtor-Plaintiff did not seek recoupment claims from earlier transactions in her Complaint, which is not the case here. We also acknowledge that this result is inconsistent with the result in the *Carswell* and *Wise* cases cited *supra.* However, neither of these cases, nor we in *Tucker,* analyzed the nature of recoupment in rendering decision. Now that we have done so, it is clear to us that recoupment from the earlier transactions, superseded by the final transaction, would have been inappropriate.

An Order consistent with the foregoing Opinion shall issue.

## ORDER

AND NOW, this 22nd day of July, 1987, upon consideration of the Stipulation of Facts making up the record of this case and the respective Briefs of the parties, consistent with the foregoing Opinion, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiffs-Debtors, JOHN AND DOROTHY MELVIN, and against the Defendant, BENEFICIAL CONSUMER DISCOUNT COMPANY, as to some of the claims set forth in their Complaint, as described in the foregoing Opinion and the subsequent paragraphs of this Order.

2. The Claim of the Defendant is reduced to an Unsecured Claim in the amount of $618.22 against the Debtors.

3. The Defendant shall satisfy any and all mortgages which it has taken against the Plaintiffs' residential real estate at 1854 East Clementine Street, Philadelphia, Pennsylvania 19135, within ten (10) days from the date of this Order.

4. The Defendant shall pay the sum of $1,000.00 to the Standing Chapter 13 Trustee, Edward Sparkman, Esquire, as damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(i). The said Trustee shall determine whether this sum may be is claimed as part of the Debtors' exemptions, and, if it may be, he shall forward this sum to the Debtors forthwith.

5. The parties are urged to attempt to agree upon reasonable attorney's fees and costs which are due to the Debtors' Counsel, per 15 U.S.C. § 1640(a)(3). If this matter is not resolved within ten (10) days, the Debtors' Counsel shall, within thirty (30) days of this Order, file a Motion requesting such fees, said Motion to be procedurally in conformity with *In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975). However, if the Debtors' Counsel remits a reasonable request for such fees, which is refused, the said Counsel may recover compensation for time spent on the fee application as well.

---

**3.** We note that, if we accepted the Lender's hypothesis that the 1984 loan did not effect a completely new transaction, we would have to examine TILA violations in the 1982, 1978, and 1976 transactions, which might result in placing the parties in nearly the same positions as our decision in any event. Neither party can have this issue both ways.