**In re Rosetta PORTER, Debtor.**

**Rosetta PORTER, Plaintiff,**

**v.**

**MID–PENN CONSUMER DISCOUNT CO. and Mid–Penn National Co., Defendants.**

Bankruptcy No. 90–11361 S.

Adv. No. 90–0641 S.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 7, 1991.

Paul A. Brooks, Community Legal Services, Inc., Philadelphia, Pa., for debtor.

Arthur J. Matusow, Philadelphia, Pa., for defendants.

Edward Sparkman, Philadelphia, Pa., Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding causes us to again visit an area of the law which we chronicled at length in *In re Perkins*, 106 B.R. 863, 866–70 (Bankr.E.D.Pa.1989), *aff'd*, C.A. No. 89–8705 (E.D.Pa. Feb. 1, 1990): the practices of MID–PENN CONSUMER DISCOUNT CO. ("Consumer") regarding retention of mortgages from a prior loan when making a new loan and a new mortgage recasting the prior loan transaction, and the disclosures required under the federal Truth–in–Lending Act, 15 U.S.C. § 1601, *et seq.* ("the TILA") in doing so. In *Perkins*, we noted the lack of success of Consumer in defending its practice of retaining multiple mortgages while not disclosing same before two panels of the Third Circuit Court of Appeals,[1] three district judges in this district,[2] and three judges of this court. *Id.* at 864, 866–70, 871.[3]

However, the record in this case reveals that the Defendants have made significant strides in accommodating their practices to these decisions. Thus, the practices challenged here are limited to a claim that the Defendants waited too long, nine days in sending a satisfaction piece to the Debtor

---

**1.** *Gill v. Mid–Penn Consumer Discount Co.*, 853 F.2d 917 (1988); and *Abele v. Mid–Penn Consumer Discount Co.*, 845 F.2d 1009 (3d Cir.1988). Subsequently, the same court reached the same result in *Appeal of Mid–Penn Consumer Discount Co.*, 891 F.2d 282 (3d Cir.1989).

**2.** In addition to the decisions of Chief Judge Emeritus Lord, Judge Weiner, and Chief Judge Bechtle of the district court in *Abele, Gill,* and the matter reported as *Appeal of Mid–Penn, supra, Nichols v. Mid–Penn Consumer Discount Co.*, 1989 WL 46682 (E.D.Pa. April 28, 1989), this string of cases was started with Chief Judge Bechtle's decision in *Bookhart v. Mid–Penn Consumer Discount Co.*, 559 F.Supp. 208, 211–12 (E.D.Pa.1983).

**3.** In addition to the cases chronicled in *Perkins,* we note another decision of this court in this line in *In re Milbourne,* 108 B.R. 522, 530–33 (Bankr.E.D.Pa.1989).

We also observe that these decisions have been criticized by a respected commentator on the TILA, R. ROHNER, THE LAW OF TRUTH IN LENDING, ¶ 5.05[13][b][iii], at 55–48 (1989 Cum.Supp.) ("Rohner"). However, in light of the decisions of the Court of Appeals, the established law of this Circuit is that failure to disclose retention of multiple mortgages is a violation of TILA meriting rescission, at least pending the effective date of certain amendments to the Official Staff Commentary on Regulation Z Truth in Lending ("the Commentary") published by the Federal Reserve Board ("FRB"), discussed at pages 938–939 *infra.*

in one transaction and 18 days in recording the satisfaction piece itself in the other, to eliminate the mortgages executed in connection with prior loans in making new loans.

We conclude that the 45–day period referenced in 21 P.S. § 682, not noted in our dictum in *In re Nichols, Nichols v. Mid–Penn Consumer Discount Co.*, Bankr. No. 86–05809S, Adv. No. 87–0600S, slip op. at 4 (Bankr.E.D.Pa., Nov. 10, 1987), *aff'd sub nom. Nichols v. Mid–Penn Consumer Discount Co.*, 1989 WL 46682 (E.D.Pa. April 28, 1989), *aff'd sub nom. Appeal of Mid–Penn Consumer Discount Co.*, 891 F.2d 282 (3d Cir.1989), is the appropriate time-limit for satisfying undisclosed prior mortgages, and that the Defendants have not violated the TILA in that regard in the instant transactions.

We also reaffirm our holding in *In re Matzulis, Matzulis v. Mid–Penn Consumer Discount Co.*, Bankr. No. 86–01964S, Adv. No. 86–0691S (Bankr.E.D.Pa. Jan. 22, 1987), that the use of the general TILA model rescission notice form, as opposed to the use of the TILA model form for refinancing, was appropriate in these transactions, because they were not actually "refinancings," as defined by the pertinent TILA Regulation.

Finally, while acknowledging the technical accuracy of the Debtor's observation that the proof of claim in issue was erroneously filed on behalf of Consumer instead of Defendant MID–PENN NATIONAL CO. ("National"), a related company, we believe that it is appropriate to allow Consumer and National (collectively "the Defendants") to amend the said claim to accurately identify the claimant.

## B. FACTUAL AND PROCEDURAL HISTORY

ROSETTA PORTER ("the Debtor") filed the individual Chapter 13 bankruptcy case underlying the instant proceeding on March 28, 1990. The meeting of creditors was initially scheduled on July 2, 1990, and the confirmation hearing was initially scheduled shortly after the expiration of the bar date on October 11, 1990.

On May 2, 1990, Consumer filed a proof of claim itemizing arrearages of $599.79 on a mortgage of April 8, 1988, in favor of National. The proof of claim also recites that a sum of $5,075.00 is "to be paid directly" to Consumer. This figure apparently references the post-petition payments falling due during the duration of the plan. On July 31, 1990, National filed an Objection to confirmation of the Debtor's plan, based upon the Debtor's alleged failure to make post-petition payments directly to it, as the proof of claim envisioned.

On that same date, July 31, 1990, the Debtor filed the Complaint in the instant adversary proceeding. The Complaint includes the following five Counts: (1) Against Consumer, for failure to properly act upon a rescission of a loan made from it to the Debtor on May 18, 1987 ("the 1987 Loan") in alleged violation of the TILA; (2) Against National, for failure to properly act upon a similar rescission of a loan made from it to the Debtor on April 8, 1988 ("the 1988 Loan"); (3) Against Consumer, for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–1, *et seq.* (referred to herein by its generic designation as a law prohibiting Unfair and Deceptive Acts and Practices, or "UDAP"), in failing to provide TILA disclosures, *see* 41 P.S. § 401; failing to advise the Debtor of "the disadvantages of refinancing existing loans;" and failing to promptly satisfy the mortgage taken in the 1987 Loan; (4) Against National, similar UDAP violations in connection with the 1988 Loan; and (5) Miscellaneous objections to Consumer's proof of claim, the most prominent of which were contentions that the Debtor owed nothing to either of the Defendants but, if she owed anything to either of them, her creditor was National, not Consumer.

The trial, originally scheduled on October 11, 1990, was continued to the date of a continued confirmation hearing in the Debtor's main case on October 30, 1990. These matters were all continued again, for a final time, until November 29, 1990, on which date the proceeding was tried. In a subsequent Order of November 30, 1990, we scheduled post-trial briefing of this pro-

ceeding to be completed by December 28, 1990, and rescheduled the confirmation hearing for January 22, 1991.

At trial, the parties offered a Trial Stipulation that is short enough to be quoted here in substantial part, omitting the paragraph numbers and altering the paragraphing to conform to the narrative format:

On May 18, 1987, [the Debtor and Consumer] entered into the 1987 loan transaction, and [the Debtor] executed a mortgage on her principal dwelling to [Consumer]. On May 22, 1987, the mortgage associated with the 1987 loan was recorded. On May 27, 1987, [Consumer] executed a satisfaction piece for the mortgage it had taken on [the Debtor's] dwelling in connection with [a prior] 1986 loan transaction. Also on May 27, 1987, [Consumer] sent the satisfaction piece and the original 1986 mortgage to [the Debtor].

On April 28, 1988, [the Debtor] and [National] entered into the 1988 loan transaction, and [the Debtor] executed a mortgage on her principal dwelling to [National]. On April 13, 1988, the mortgage associated with the 1988 loan was recorded. On April 14, 1988, [Consumer] executed a satisfaction piece for the mortgage it had taken in connection with the 1987 loan transaction. Said satisfaction piece was sent by [Consumer] to City Hall for recording on April 24, 1988. On April 26, 1988, the satisfaction piece for the 1987 mortgage was recorded.

On account of the 1987 loan, [the Debtor] made payments totalling $1,265.34 to [Consumer]. On account of the 1988 loan, [the Debtor] made payments totalling $4,263.00 to [National].

The only witnesses at the trial were Leonard Tench, a Vice–President of the Defendants, and Edwin Seave, Esquire, the Defendants' President and owner ("Seave"). Tench testified that he usually handled rescissions himself, although Seave claimed to have more oversight of these matters than Tench realized. Tench was confronted with a deposition taken in connection with the case of *In re Steinbrecher*, 110 B.R. 155 (Bankr.E.D.Pa.1990), in which he stated that, if a borrower rescinded a refinanced loan, Consumer would retain the mortgage from the prior loan. However, Tench further stated that, after that deposition, Seave informed him that he was incorrect and that, in fact, if a refinanced loan were rescinded, any and every outstanding mortgage would have been satisfied as well as any new mortgage taken.[4]

Also, through Tench, the rescission forms given to the Debtor in the transactions in issue were produced. Both tracked Rescission Model Form (General) H–8 published in the Appendix to 12 C.F.R., as opposed to Rescission Model Form (Refinancing) H–9. Tench also identified a new rescission notice form, utilized by the Defendants in "refinancing" transactions as of November, 1988, subsequent to the Debtor's loans in issue, which begins as follows:

Your Right to Cancel:

You are entering into a new transaction to increase the amount of credit provided to you. We acquired a (mortgage/lien-security interest) (on/in) your home under the prior transaction and will satisfy that (mortgage/lien/security interest) within forty-five (45) days from [date of refinancing]. This new transaction will result in a new (mortgage/lien/security interest) (on/in) your home dated today....

Seave reiterated that the Defendants' policy, prior to the introduction of the new form, would have been to satisfy any prior mortgages, as well as the new mortgage, in the event of a timely rescission of a

---

**4.** In an Order of November 22, 1990, we denied the Debtor's motion, filed November 9, 1990, attempting to compel the Defendants to produce records of all of their rescinded loans in 1987 and 1988 to test the Defendants' actual practices. Since the Defendants kept no records of such matters, the only means of ascertaining this information would have been for the Defendants to have reviewed all of their records and files in storage. Since the Defendants could provide this information only after a considerable effort, *see generally* 4A J. MOORE, FEDERAL PRACTICE, ¶ 33.26, at 33–145 to 33–155 (2d ed. 1990), and the importance of the result would have been doubtful, see pages 940–941 *infra,* we denied this motion.

"refinanced" loan. The new form was apparently devised to allow the Defendants to retain the old mortgage in the event of a rescission, as well as to better explain the Defendants' actual practices in taking new mortgages and satisfying old ones in such transactions. Seave also enumerated several reasons why the Defendants delayed in filing satisfaction pieces on prior mortgages, including waiting to see if a rescission notice arrived in the mail dated before the end of the rescission period, completing title searches and checking that insurance was in place, and delays in typing and filing necessary documents.

C. SINCE THE DEFENDANTS TOOK ALL STEPS NECESSARY ON THEIR PART TO SATISFY THE MORTGAGES TAKEN IN PRIOR LOAN TRANSACTIONS WITHIN 45 DAYS AFTER THE NEW LOAN TRANSACTION WERE CONSUMMATED, THE DEFENDANTS HAVE NOT IMPERMISSIBLY FAILED TO DISCLOSE THEIR RETENTION OF MULTIPLE MORTGAGES AGAINST THE DEBTOR

The Debtor argues that the Defendants unreasonably delayed the process of satisfaction of the mortgages taken in the respective previous loan transactions. As to the 1987 Loan, she points out that Consumer sent the new mortgage to City Hall in time for it to be recorded on May 22, 1987, just one day after the end of the rescission period, but did not execute the satisfaction piece until May 27, 1987, allegedly in furtherance of its actual practice of retaining the old mortgage for the purpose of insuring that, if the Debtor cancelled the refinancing, it could enforce the old mortgage to recover the sums it had previously lent to her.

As to the 1988 Loan, National sent the new mortgage to City Hall quickly enough that it was recorded on April 13, 1988, the day after the rescission period ended. However, not until April 24, 1988, twelve days after the end of the rescission period, did the Lender send an executed satisfaction piece to City Hall for recording, and the satisfaction piece was not duly recorded until April 26, 1988.

The Debtor, in contending that the period of delay in satisfying the prior mortgages was too long, relies heavily upon the following dictum in our decision of November 10, 1987, in *Nichols, supra,* slip op. at 4:

> While we might be convinced that the "Mortgage Satisfaction Date" is more significant than the "Date Satisfaction Recorded," ... we cannot discount the fact that the mortgage taken in the July 5, 1983, transaction was not even satisfied until [January 19, 1984,] about seven weeks after the November 30, 1983, transaction, and the satisfaction was not recorded until [February 10, 1984,] several weeks thereafter. Thus, at least two mortgages remained of record as of the date of the November 30, 1983, transaction, and the notice of rescission right clearly implies that but one mortgage is held as security for the loan. As per our analysis of analogous facts in [*In re*] *Melvin,* ... 75 B.R. 952, 954, 956 [(Bankr.E.D.Pa.1987)] (mortgage taken in transaction prior to January 24, 1984, was retained, with a new mortgage taken as of January 24, 1984, until April 4, 1984), we hold that a failure of the Lender to satisfy a mortgage taken in a previous transaction immediately upon the passing of the three-day rescission period after the refinancing transaction is closed constitutes retaining two mortgages simultaneously....

*See also Perkins, supra,* 106 B.R. at 874 (court "not prepared to say" that 29-day delay between new transaction and satisfaction of old mortgage was permissible).

The Defendants, meanwhile, ask us to study the relevant sequence of dates in the instant transactions even more closely. They point out that the May 18, 1987, transaction was entered into on a Monday. They then claim that the earliest date that a satisfaction piece could have been recorded would have been "at the end of the three (3) days which would have been Friday, May 22, 1987." They reference Seave's testimony that the Defendants wait two more days in order to be "reasonably satisfied that the consumer has not rescinded." 12 C.F.R. § 226.23(c). Since Monday, May 25, 1987, was a legal holiday due to

the celebration of Memorial Day, they claim that the earliest the prior mortgage could have been satisfied was May 26, 1987, and, in fact, the satisfaction piece was executed on May 27, 1987.

As to the 1988 Loan, they observe that it was consummated on Friday, April 8, 1988. The earliest that the loan could have been satisfied was after the running of the three days for rescission, which would have extended through Tuesday, April 12, 1988. The two-day waiting period would not have expired until April 14, 1988, on which date the satisfaction piece was executed prior to its being sent for filing on April 24, 1988.

Brushing aside the *Nichols* dictum regarding the impermissibility of *any* delay, the Defendants point out that the delay in *Nichols* from the date of the new loan to the signing of the satisfaction piece was 49 days, and the delay from the date of the new loan to the date of the filing of the satisfaction piece was 72 days. *See also Perkins, supra,* 106 B.R. at 874 (certain mortgages, not satisfied within 29 days, remained of record for more than a year after the new transaction).

■ Finally, irrespective of the holding in *Nichols* as well as *Perkins* that the amendment made to the Commentary in March, 1989, will not be applied retroactively, they again posit that these changes are significant in analyzing the instant transactions. They point out that, contrary to what both parties asserted and we reported in *Perkins,* 106 B.R. at 868–69, the change in the Commentary took a different form than an amendment to ¶ 226.23(b)(3), which was originally proposed. On March 7, 1989, the FRB instead amended the Commentary's definition of "Security Interest," at ¶ 226.2(a)(25), to add a new subparagraph 6, reading as follows:

> 6. *Specificity of disclosure.* A creditor need not separately disclose multiple security interests that it may hold in the same collateral. The creditor need only disclose that the transaction is secured

by the collateral, even when security interests from prior transaction remain of record and a new security interest is taken in connection with the transaction. This change, making the disclosure of multiple security interests unnecessary in disclosure statements as well as rescission notices, *see* 54 Fed.Reg. 9418 (1989); and Rohner, *supra,* ¶ 5.05[13][b][iii], n. 317.4, at S5–49,[5] is, according to the Defendants, mainly a definitional clarification, entitled to retroactive effect.

We cannot accept the Defendants' contention that the amended ¶ 226.2(a)(25)6 can be applied retroactively for several reasons. Firstly the controlling *Nichols* Court of Appeals decision, as well as the decisions at trial and in appeal in *Perkins,* were rendered after March 7, 1989, when the new version of ¶ 226.2(a)(25)6 was already in effect. Despite the possible misunderstanding by the courts in these cases that they were addressing the proposed Commentary amendment rather than the amendment as actually promulgated, these cases in fact must have been decided on the law as it actually existed. Furthermore, the ultimate Commentary change was effected only after compliance with the publication requirements of 5 U.S.C. § 553(b). It was for this reason that we held, in *Perkins,* that the Commentary change constituted "legislative rulemaking" which should not generally, or here, be given retroactive effect. 106 B.R. at 870–73.

■ However, we cannot totally discount the apparent view of the FRB and Rohner that the undisclosed retention of undisclosed multiple security interests was always a doubtful TILA violation, and, as to contemporary transactions covered by the Commentary Amendment, is archaic. It is difficult, in this climate, to reiterate the vigor of the *Nichols* dictum quoted at page 937 *supra.* Also, we cannot discount the efforts of the Defendants to come to grips with the problems identified in the

---

5. This final Regulation, in providing that retention of multiple mortgages need not be disclosed in contexts other than the rescission notice, eliminates the accuracy of our observation in *Perkins,* 106 B.R. at 864–65 n. 1, that the change in the Commentary "would not ... af-

fect the established law that the failure of Mid-Penn to disclose multiple mortgages is an inaccurate disclosure of the security interests taken which are set forth in the disclosure statement itself."

multiple-mortgage cases by satisfying the old mortgages with reasonable promptness and by the promulgation of the new, more accurate rescission notice form utilized by the Defendants as of November, 1988.

In determining what period of time constitutes an unreasonable delay in satisfying an undisclosed retention of a mortgage taken in a prior transaction making a new loan, we are now inclined to make reference to the period in which a mortgage must be satisfied subsequent to payment generally under the following applicable Pennsylvania law, 21 P.S. §§ 681, 682:

> § 681. Satisfaction of mortgage on margin of record or by satisfaction piece
>
> Any mortgagee of any real or personal estates in the Commonwealth, having received full satisfaction and payment of all such a sum and sums of money as are really due to him by such mortgage, shall, at the request of the mortgagor, enter satisfaction either upon the margin of the record of such mortgage recorded in the said office or by means of a satisfaction piece, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon.
>
> § 682. Fine for neglect
>
> And if such mortgagee, by himself or by his attorney, shall not, *within forty-five days after request and tender made for his reasonable charges,* return to the said office, and there make such acknowledgment as aforesaid, he, she or they, neglecting so to do, shall for every such offence, forfeit and pay, unto the party or parties aggrieved, any sum not exceeding the mortgage-money, to be recovered in any Court of Record within this Commonwealth, by bill, complaint or information (emphasis added).

This period is 45 days. While we believe that the 45–day period should run from the date that the new loan is consummated to the date of the mailing of the satisfaction piece to the borrower; or, if satisfaction is undertaken by the lender, to the date that satisfaction is actually recorded, we accept the 45–day term-period as reasonable. We note that the 45–day period is the time in which the Defendants certify, on their new

rescission notice form, that they will satisfy a mortgage from a prior loan. We also note that this conclusion is consistent with the result in *Nichols,* because the lapse between the date of the new loan and the recordation of the satisfaction piece of the old mortgage was 72 days, well beyond the 45–day period.

However, this conclusion does result in a decision in favor of the Defendants in the instant factual setting on this point. The satisfaction pieces were forwarded to the Debtor and recorded, respectively, within nine and 18 days in the 1987 Loan and 1988 Loan transactions.

## D. THE DEFENDANTS' USE OF THE GENERAL MODEL RESCISSION NOTICE FORMS H–8, AS OPPOSED TO THE USE OF THE REFINANCING MODEL FORMS H–9, WAS APPROPRIATE

■ The Debtor is well aware of the decision in *Matzulis, supra,* holding that the use of Rescission Model Form (General) H–8 published in the Appendix to 12 C.F.R., as opposed to Rescission Model Form (Refinancing) H–9 appearing therein, is correct when a lender enters into a new transaction with a borrower in which the only security ultimately retained is the new mortgage taken in connection with the new loan. The *Matzulis* decision was, of course, the springboard for the later decisions favorable to borrowers which resulted in *In re Jones,* 79 B.R. 233, 235, 239–41 (Bankr.E.D.Pa.1987), *rev'd in part on other grounds sub nom. Jones v. Mid–Penn Consumer Discount Co.,* 93 B.R. 66 (E.D. Pa.1988); *Melvin, supra,* 75 B.R. at 954– 57; and *In re Tucker,* 74 B.R. 923, 928–31 (Bankr.E.D.Pa.1987).

The Debtor endeavors to draw two distinctions between *Matzulis* and this case: (1) The intervening effectiveness of a change in the wording of the Regulation defining "refinancing," 12 C.F.R. § 226.23(f)(2), which allegedly broadens the scope of the term "refinancing" to include a transaction in which a new security interest is taken as well as one in which the lender merely retains a prior security inter-

est in making a new loan; and (2) The allegedly credible testimony of Tench in the *Steinbrecher* deposition, which purportedly reveals that the Defendants' practice is *not* to treat a refinancing like an entirely new transaction, but to treat it like a supplement to the prior loan transaction, whereby, if the new loan is rescinded, the old mortgage remains in effect. We are not convinced that either of these distinctions is viable.

Addressing the second alleged distinction first, we note that all of the foregoing cases (*Nichols, Jones, Melvin,* and *Tucker*) preceded November, 1988, the date that the Defendants changed their rescission notice form, and that all but the *Melvin* case involved Consumer, a defendant here. Therefore, the same "practices" of the same lender, prior to November, 1988, were the backdrop of our decisions in these cases as in the instant case.

It is true that the issue of how the Defendants generally treated borrowers who rescinded only the most recent in a series of loans never arose in those cases. However, we question whether the issue has any relevance, which in addition to the fact that the discovery on this issue by the Debtor could be answered only after a significant expenditure of time by the Defendants, was why we denied the Debtor's motion to compel answers to this discovery. It does not appear in any way inequitable or improper for the Defendants to revitalize a previous loan and the mortgage which secures it if a new loan with a new mortgage is rescinded. The effect of rescission should be to restore the parties to the *status quo ante,* which, in this instance, would contemplate restoring the parties to the terms of the old loan. For this reason we were surprised to hear Seave testify that the Defendants' policy was to satisfy both the *old* mortgage and the new mortgage if a borrower making a new loan, prior to the use of the new form in November, 1988, were to rescind the new loan. This practice would effect a tremendous windfall to the borrower rescinding the new loan. It is "bad enough" that a borrower could rescind a loan on the basis that material disclosure violations occurred in the new loan transaction after the 45–day

period in which the old mortgage must be satisfied, thus leaving the Defendants with no valid mortgage. However, it does not appear at all inconsistent with treating the new loan as a transaction in which the H–8 rescission notice is required to allow the lender to wait out at least the 45–day period to satisfy the old mortgage in the event of rescission. This observation further supports the conclusion that it would be inequitable to require the Defendants to satisfy the new mortgage any sooner than at the end of a 45–day period.

Therefore, it is immaterial to us what the Defendants' practices in reacting to rescissions of "refinanced" new loans were in deciding the issue of whether the use of the H–8 model form was appropriate. The important fact is that, barring the event of rescission, which would eliminate the new loan entirely, the new loan was treated like an entirely new transaction, with a new mortgage being taken, not like a transaction contemplated by model form H–9, in which only the mortgage acquired in the original transaction would be retained as security in any event.

Hence, whether we believe the testimony of Tench and Seave at trial is irrelevant to the determination of this issue. We therefore need not and do not reach the issue of whether the testimony of Tench and Seave at trial on this issue was credible.

■ The second distinction offered by the Debtor has more substance. It is true that, effective December 18, 1986, *see* 51 Fed.Reg. 45,296 (1986), the language of 12 C.F.R. § 226.23(f)(2) was materially changed. In *Jones, Nichols, Melvin,* and *Tucker,* we considered transactions entered into during the effective period of former 12 C.F.R. § 226.23(f)(2), which read as follows:

(f) Exempt transactions. The right to rescind does not apply to the following:

. . . . .

(2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. If the new amount financed exceeds the unpaid principal bal-

ance plus any unearned unpaid finance charge on the existing debt, this exemption applies only to the existing debt and its security interest.

In *Melvin*, 75 B.R. at 975, we pointed out that, where a new mortgage is taken in making a new loan, the transaction is *not* "already secured" by a mortgage in place, but by a new mortgage which will supplant the prior mortgage. Therefore, a transaction where a new mortgage is taken may not quite fit the definition of a "refinancing" recited in § 226.23(f)(2).

However, as to transactions subsequent to December 18, 1986, a new 12 C.F.R. § 226.23(f)(2), reading as follows, applies:

> (f) Exempt transaction. The right to rescind does not apply to the following:
>
> .        .        .        .        .
>
> (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

The new second sentence appears to restrict the borrower's rescission right to only the extent of the additional amount advanced in the new transaction. Certainly, the meaning is clearer than in the previous version of the Regulation. In fact, Rohner takes this court to task for "miss[ing] this point" of § 226.23(f)(2) in allowing the *Jones* and *Tucker* debtors to rescind their entire new loans. Rohner, *supra*, ¶ 8.02[2][c] n. 78, at S8–11.[6] Judge

Fox, in *Steinbrecher, supra*, 110 B.R. at 165–66 n. 20, also appears to question the correctness of our decisions holding that the H–8 model form is appropriate and that the Debtor can rescind the entire loan because of an error in a new transaction.[7]

Despite the changes in 12 C.F.R. § 226.23(f)(2), we believe that it can still be maintained that the term "refinancing" is properly applied only to a transaction which is "already secured" by a prior mortgage, as opposed to one secured by a new mortgage. Since the Defendants now agree that prior mortgages must and will be satisfied, it is clearer than ever that they intend to secure a new loan with only a new mortgage. The H–9 form, with its recitation that the borrower will retain only the old mortgage as security in the new transaction, is more clearly inapplicable to the Defendants' new loan transactions than ever. We agree that the second sentence of the new 12 C.F.R. § 226.23(f)(2) may cut the other way, by stating that only the advance of new money in a refinancing transaction is subject to rescission. However, the entire section—and hence the second sentence—applies only to a "refinancing." The Defendants' instant transactions with the Debtor do not appear to satisfy the definition of "refinancing" per the unchanged language of the first sentence of § 226.23(f)(2) and of Model Form H–9.[8]

Hence, we reaffirm the conclusion which we reached in *Matzulis* and hold that the Defendants cannot be faulted for utilizing Model Form H–8 as opposed to Model Form H–9 in the instant new loan transactions. The Defendants are therefore entitled to prevail as to all of the TILA counts against them. The UDAP claims based upon TILA

---

**6.** Rohner fails to note that this court was, in those transactions, interpreting the prior version of § 226.23(f)(2). Moreover, as Rohner later notes, it was not using either the H–9 or the H–8 model form which "got [Consumer] into trouble" in *Jones* and *Tucker*, but using a hybrid form which inaccurately disclosed the parties' rights in the transaction. *See* Rohner, *supra*, ¶ 8.03[1][b], n. 126, at S8–16. Consumer's new form, though arguably a "hybrid," appears to be acceptable because it more accurately discloses the practice of Consumer in taking security in "refinancing" prior loans.

**7.** *But see Steinbrecher,* 110 B.R. at 165–66 (Judge Fox nevertheless allows the debtor to rescind all loans in a series of transactions because of an error in the first in the series of loans which he holds impacts upon the later loans in the series).

**8.** We recognize that the definition of the term "refinancing" generally, *see* 12 C.F.R. § 226.20(a), is broader than the definition posited here. The Regulation in issue, 12 C.F.R. § 226.23(f)(2), and this discussion refers only to the scope of transactions exempt from the right of rescission because they are a "refinancing."

violations and the Defendants' alleged failure to properly satisfy their mortgages must also fail. Evidence that the Defendants failed to advise the Debtor of the "disadvantages of refinancing" her loans is absent. *Compare Milbourne*, 108 B.R. at 533–39. Therefore, the Debtor's UDAP claims must fail as well.

E. WHILE THE DEBTOR CORRECTLY OBSERVES THAT CONSUMER, AS OPPOSED TO NATIONAL, HAS IMPROPERLY FILED A PROOF OF CLAIM AGAINST HER, WE DEEM IT EQUITABLE TO ALLOW THIS CLAIM TO BE AMENDED TO BE ASSERTED BY NATIONAL

The Debtor attacks Consumer's proof of claim the following grounds: (1) It is National who was the lender in the last, superseding loan of the Defendants to the Debtor, and hence any claim of Consumer must be stricken; (2) The proof of claim, in violation of Local Bankruptcy Rule ("L.B. Rule") 3001.1(b), recites only a calculation of the arrearages and no calculation of the entire balance due, even though the Debtor's plan contemplates payment of the Defendants' entire claim; and (3) The "claim" for arrearages was calculated incorrectly.

■ The Debtor appears to be correct in her assertion that the proof of claim should have been filed by National, not Consumer. Attached to the claim as support for the security interest claimed is the mortgage of April 8, 1988, in favor of National. No assignment of this mortgage to Consumer is alleged.

■ However, although the bar date passed over three months ago, it appears equitable, in the instant factual setting, to allow an amendment to Consumer's timely proof of claim to properly designate the claimant, although we will limit their time for doing so. We must consider several equitable factors to determine whether allowing the Defendants to so proceed would constitute an impermissible new claim or constitute a permissible amendment to a timely claim. These factors include whether the Debtor had reason to know of the claim prior to the bar date, whether any other creditors will be unfairly prejudiced or receive a windfall if the late filing is

allowed, and the degree of fault of the claimant in making a late filing. *See, e.g., In re Metro Transportation Co.*, 117 B.R. 143, 146–51 (Bankr.E.D.Pa.1990); and *In re Owens*, 67 B.R. 418, 423–25 (Bankr.E.D.Pa. 1986), *aff'd sub nom. United States v. Owens*, 84 B.R. 361 (E.D.Pa.1988). Where the documents attached to the original claim support the amendment, *In re Mitchell*, 82 B.R. 583, 585 (Bankr.W.D.Okla. 1988), and "misdescriptions and minor inaccuracies" are in issue, *In re Lanman*, 24 B.R. 741, 743 (Bankr.N.D.Ill.1982), allowance of amendments to a timely claim is appropriate. Correcting the name of a claimant by amendment may be appropriate, *Carnegia v. Georgia Higher Education Assistance Corp.*, 691 F.2d 482, 483 (11th Cir.1982), at least where such a correction is made within a "reasonable time," usually measured by six months from the bar date. *See In re Frascatore*, 98 B.R. 710, 721–23 (Bankr.E.D.Pa.1989).

In the instant setting, the Debtor is well aware of the basis, propriety, and amount of the claim of one of the Defendants against her, and the error in naming Consumer as opposed to National. The claimant did not deceive her. We will therefore allow the Defendants until January 14, 1991, to file an amendment to Consumer's timely-filed claim. In so doing, we admonish them to name National if it is in fact the claimant; to comply strictly with L.B. Rule 3001.1(b) in specifying a claim for the entire balance of the obligation due to it; and to carefully review the Debtor's specific objections to their claim as filed. We will then direct the Debtor to file any Objection to this amended claim, any other pleadings necessary to prepare this case for confirmation, and any amended plan by January 21, 1991, in order that a final confirmation hearing can be scheduled on January 22, 1991, even if the plan may not be confirmable on that date.

F. CONCLUSION

An Order consistent with the conclusions reached in this Opinion will be entered.

ORDER

AND NOW, this 7th day of January, 1991, after a trial of this proceeding on

November 29, 1990, and upon careful review of the post-trial submissions of the parties, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff and Debtor, ROSETTA PORTER ("the Debtor"), and against the Defendants, MID–PENN CONSUMER DISCOUNT CO. and MID–PENN NATIONAL CO., as to Count Five of the Debtor's Complaint only. Judgment is entered in favor of the Defendants and against the Debtor as to all other Counts in the Complaint.

2. The proof of claim filed by Defendant MID–PENN CONSUMER DISCOUNT CO. is STRICKEN.

3. However, the Defendants, or either of them, are accorded permission to file an Amended Proof of Claim and serve same upon the Debtor's counsel and the Trustee on or before January 14, 1991. Failure to do so shall result in the bar of either of the Defendants to file any proof of claim in this case.

4. The Debtor shall file any Objections to the Defendants' Amended Proof of Claim, any Amended Plan, and any other pleadings necessary to achieve confirmation of the Plan or Amended Plan and serve same upon the Defendants' counsel, the Trustee, and any other interested party.