**In re Mary M. WRIGHT, Herbert M. Wright, Debtors.**

**Mary M. WRIGHT, Herbert M. Wright, Plaintiffs,**

v.

**MID–PENN CONSUMER DISCOUNT CO., Defendant.**

Bankruptcy No. 91–10187S.
Adv. No. 91–0034S.

United States Bankruptcy Court, E.D. Pennsylvania.

June 6, 1991.

David A. Searles, Philadelphia, Pa., for debtors.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

Arthur J. Matusow, Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

This matter is the latest in the long series of proceedings in which debtors represented by Community Legal Services, Inc. ("CLS"), an agency providing free legal representation to low-income residents of Philadelphia, have asserted violations of the federal Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.* ("the TILA"), against Mid–Penn Consumer Discount Co. ("Mid–Penn")

which arise out of a series of loan transactions between Mid–Penn and certain debtors represented by CLS. *See, e.g., In re Perkins*, 106 B.R. 863, 866–68 (Bankr.E.D. Pa.1989), and cases collected therein. This proceeding presents a configuration of issues previously considered in Opinions in these and other matters in this court.

Our decision in *In re Moore*, 117 B.R. 135 (Bankr.E.D.Pa.1990), establishes that a rescindable TILA violation occurred in the third of the four loan transactions in the instant series. Our decision in *In re Nichols, Nichols v. Mid–Penn Consumer Discount Co.*, Bankr. No. 86–03809S, Adv. No. 87–0600S, slip op. at 6–7 (Bankr.E.D.Pa. Nov. 10, 1987), *aff'd sub nom. Nichols v. Mid–Penn Consumer Discount Co.*, 1989 WESTLAW 46682 (E.D.Pa. April 28, 1989), *aff'd sub nom. Appeal of Mid–Penn Consumer Discount Co.*, 891 F.2d 282 (3d Cir. 1989), unreported but well-known to the parties, establishes that an absence of an independent TILA violation in the fourth transaction in the series neither cures nor enhances the violations in the third transaction. Finally, the failure of Mid–Penn, or the Debtor on its behalf, to file a proof of claim eliminates the issue of whether the Debtor might be entitled to recoupment against any claim of Mid–Penn, However, our previous decision in *In re Melvin*, 75 B.R. 952, 959–60 (Bankr.E.D.Pa.1987), establishes that no claim of recoupment from

the first and second transactions would be cognizable in any event.

The net result is a judgment in favor of the Debtor for only those statutory damages arising from Mid–Penn's refusal to act upon the valid rescission of the third transaction in this series.

## B. PROCEDURAL AND FACTUAL HISTORY

MARY M. WRIGHT and HERBERT H. WRIGHT ("the Debtors") filed a joint Chapter 13 bankruptcy case on January 10, 1991. A meeting of creditors, pursuant to 11 U.S.C. § 341(a), was conducted on March 13, 1991. A hearing to consider, *inter alia*, confirmation of their Chapter 13 Plan has initially been scheduled on June 20, 1991.

The instant proceeding was commenced on January 14, 1991, just four days after the Debtors' bankruptcy filing. The trial was originally scheduled on March 7, 1991, but was continued until April 4, 1991, to allow the parties to complete discovery. On April 4, 1991, the parties agreed to submit the proceeding to us on a Stipulation of Facts to be filed imminently and briefing to be completed by May 31, 1991.

The series of four consumer loans described in the Stipulation, all secured by mortgages against the Debtors' residential realty, lends itself to the following analysis:

| Transaction No. | Date | Amount Financed | Finance Charge | Date of Satisfaction of Mortgage | Amt. Paid on Loan |
|---|---|---|---|---|---|
| 1 | 10/24/86 | $2,085.40 | $554.60 | 5/5/89 | No Info |
| 2 | 4/15/87 | 2,388.44 | 635.56 | 5/5/89 | No Info |
| 3 | 3/27/89 | 1,781.36 | 474.64 | No Info | $ 842.02 |
| 4 | 1/12/90 | 2,182.75 | 757.25 | Not Applicable | 1,073.44 |

In the first transaction, the TILA Disclosure Statement ("the D/S") states that the Debtors paid the City of Philadelphia $567.45 for real estate taxes and distributed $210.93 to the Debtors. In fact, the copies of the checks distributed in the transaction indicate that the City was paid

only $479.67 and the Debtors received $298.71.

Neither the TILA D/S nor the Notice of Right to Rescind ("the Notice") given to the Debtors in the second transaction disclosed the fact that Mid–Penn retained the mortgages taken in connection with the

first transaction. Similarly, the retention of the mortgages taken in the first and second transactions were disclosed in neither the D/S nor in the Notice given to the Debtors in connection with the third transaction.

Also, in the third transaction, Mid–Penn required the Debtors to purchase fire insurance on their home as a condition of their obtaining credit. The $175.60 cost of this insurance is indicated on the D/S only by a designation of payment of this sum to Sidney Rosenfeld for fire insurance on the Debtors' dwelling as an "Amount Paid to Creditors on your Behalf." This cost was disclosed as part of the "Amount Financed" and not as part of the "Finance Charge" in the D/S given to the Debtors in connection with this transaction.

In the fourth transaction, the D/S included a similar recitation regarding a renewal of fire insurance from Sidney Rosenfeld at the same cost, which was again disclosed as part of the "Amount Financed" rather than the "Finance Charge" in this transaction. However, the D/S also included the following recitation on the bottom of the second side, followed by the parties' signatures:

I/WE HAVE THE OPTION TO CHOOSE OUR FIRE INSURANCE FOR MY/OUR DWELLING AND RENEWALS FROM EITHER MY/OUR OWN SOURCES OR THROUGH MID–PENN.

On December 19, 1990, the Debtors, by their counsel, wrote a letter to Mid–Penn indicating that they were rescinding the third and fourth transactions in this series.[1] On January 11, 1991, Mid–Penn's counsel responded by letter that it refused to effect the rescissions demanded, as Mid–Penn believed that the Debtors had no rights to rescind.

In its Answer to the Complaint which followed three days later, Mid–Penn admits that this proceeding is core under 28 U.S.C. § 157(b)(2)(K). In addition to invoking the TILA, the Debtors, in that Complaint, invoke 11 U.S.C. § 506 and assert that any claim of Mid–Penn against their home is

rendered unsecured by reason of the presence of prior liens in excess of the value of the home. Neither the Stipulation nor the Complaint address the filing of a proof of claim by Mid–Penn. The Complaint merely alleges that "any" claim of Mid–Penn is unsecured. The Claims Docket indicates no filing of a proof of claim by or on behalf of Mid–Penn. The parties, in their Briefs, agree that no proof of claim has been filed by Mid–Penn to date, although the Debtors observe that the bar date for filing claims will not expire until June 11, 1991.

## C. CONCLUSIONS OF LAW/DISCUSSION

### 1. MID–PENN'S FAILURE TO DISCLOSE THE DEBTORS' RIGHT TO CHOOSE THE PROPERTY INSURER IN THE THIRD TRANSACTION RENDERS ITS DISCLOSURES IN THAT TRANSACTION VIOLATIVE OF THE TILA, AND RENDERS THE TRANSACTION RESCINDABLE.

■ As the Debtors readily point out, this court has held, in *Moore, supra,* 117 B.R. at 138–41, that the failure of Mid–Penn to disclose to them that they may obtain compulsory property-damage insurance coverage from a person of their choice requires that Mid–Penn preclude this charge from the "Finance Charge" in the third transaction. *See also* 15 U.S.C. § 1605(c); 12 C.F.R. § 226.4(d)(2); Official Staff Commentary on Regulation Z Truth in Lending, ¶ 226.4(d)(8); and *In re Steinbrecher,* 110 B.R. 155, 163–65 (Bankr.E.D. Pa.1990) (FOX, J.). This disclosure deficiency results in an erroneous disclosure of the "Finance Charge" in the D/S, giving rise to a "material" disclosure violation which justifies rescission. *Moore, supra,* 117 B.R. at 141.

In *Moore,* unlike here, Mid–Penn was unsuccessful in defending its actions even though it made a sympathetic record on this issue. In that case, Mid–Penn established that it initially merely renewed fire

---

**1.** The three-year period in which the Debtors were provided a right to rescind had, by this time, expired as to the first and second transactions. *See* 15 U.S.C. § 1635(f).

insurance coverage which the debtor had obtained through his original mortgagee from a company unrelated to Mid–Penn. *Id.* at 138. Then, when this coverage was cancelled, Mid–Penn obtained replacement coverage through the Sidney Rosenfeld Agency for an annual premium which was $29.00 less than that charged by the prior insurer, and it promptly refunded this savings to the debtor. *Id.* Nevertheless, this "technical" violation of the disclosure-of-choice requirement was found sufficient to trigger several serious consequences flowing from Mid–Penn's refusal to respond properly to a valid rescission of a consumer credit transaction. *Id.* at 141–43.

■ Side-stepping the rather obvious application of the reasoning in *Moore* to the third transaction in issue,[2] Mid–Penn argues that "[w]hether there is merit to Plaintiff's position or not, there is no right to rescind this transaction since there is a new transaction now in effect." Brief of Mid–Penn Consumer Discount Co., at 4. In other words, Mid–Penn alleges that, since the third transaction was effectively eliminated by the fourth transaction, the Debtors' right to rescind the third transaction was also eliminated.

The only authorities cited in support of this conclusion are *King v. California,* 784 F.2d 910 (9th Cir.1986), *cert. denied,* 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987); and the recent decision of this court in *In re Porter,* 122 B.R. 933 (Bankr.E.D.Pa. 1991). *King* contains a holding which is on point, 784 F.2d at 913, but it reaches this conclusion without the analysis that we believe that this issue deserves.

*Porter,* 122 B.R. at 939–41, re-affirms this court's previous line of decisions holding that a transaction in which a previous loan is paid off, but in which a new mortgage on the borrower's residence is taken, is not a "refinancing," for purposes of (particularly) Rescission Model Form (Refinancing) H-9 or 12 C.F.R. § 226.23(f)(2). *Accord, e.g., Melvin, supra,* 75 B.R. at 956–57. *But see Steinbrecher, supra,* 110 B.R. at 165–66 & n. 20. However, *Porter* did not address the pertinent issue of whether a subsequent payoff of a rescindable loan vitiates a debtor's otherwise-effective rescission of that loan.

This latter issue, all that is significant to the present discussion, was expressly discussed at some length by us in *Nichols, supra,* slip op. at 6–7. In *Nichols,* a decision ultimately affirmed by the Third Circuit Court of Appeals, we held that at least the statutory penalty for refusing to respond properly to a valid rescission of a loan transaction was not eliminated by the presence of a subsequent refinancing of the loan in a transaction in which no actionable TILA violations were identified. We also pointed out that, in *Nichols,* the same conclusion had been reached in another case affirmed by the Third Circuit Court of Appeals, *Abele v. Mid–Penn Consumer Discount Co.,* 77 B.R. 460, 467 (E.D.Pa. 1987), *aff'd,* 845 F.2d 1009 (3d Cir.1988). *Accord, Steinbrecher, supra,* 110 B.R. at 166 n. 20.

Furthermore, we note that these decisions are implicitly supported by the very language of 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.25(a)(3). These provisions state that the right to rescind expires only upon a lapse of three years or upon the customer's transfer of all of his interest in the property in which security is taken. The result is also supported by a line of cases holding that liability from TILA disclosure violations are not vitiated by a rescission of the errant loan transaction. *See, e.g., Etta v. Seaboard Enterprises, Inc.,* 674 F.2d 913, 919 (D.C.Cir.1982); *Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 647 (8th Cir.1980); *White v. Arlen Realty & Development Corp.,* 540 F.2d 645, 651 (4th Cir.1975); and *Sellers v. Wollman,* 510 F.2d 119, 122–23 (5th Cir. 1975). *But see Steinbrecher,* 110 B.R. at 159–60 (TILA rescission held to eliminate certain state law claims arising out of the rescinded transaction).

■ Finally, we note that, if we accepted Mid–Penn's position, we would be com-

---

**2.** Mid–Penn's addition of the language quoted at page 769 *supra* to its forms also appears to indicate a recognition that its omission from its prior forms constituted a violation of the TILA.

pelled to conclude that any refinancing or recasting of a rescindable transaction would eliminate the right to rescind that transaction. Thus, under Mid–Penn's reasoning, entering into a subsequent transaction which was also rescindable that recast or refinanced an earlier rescindable transaction would render that earlier transaction impregnable to attack. However, there is clear authority in this jurisdiction for the principle that multiple rescissions of a series of rescindable transactions give rise to multiple damages for each separate transaction. *Abele, supra,* 77 B.R. at 469–70; *Steinbrecher, supra,* 110 B.R. at 166; and *In re Tucker,* 74 B.R. 923, 923 (Bankr.E.D. Pa.1987). *See also* 15 U.S.C. § 1640(g).

We therefore conclude that the Debtors validly rescinded the third of the four transactions in issue, and that Mid–Penn committed an actionable violation under 15 U.S.C. § 1635 of the TILA by refusing to comply with the Debtor's rescission request which was not vitiated by the Debtors' entry into the fourth transaction. *See* 15 U.S.C. § 1640(a).

2. MID–PENN'S VIOLATIONS OF THE TILA IN THE THIRD TRANS-ACTION CANNOT BE CARRIED OVER TO THE FOURTH TRANS-ACTION.

■ The Debtors argue that TILA violations giving rise to a right to rescind existed in the fourth transaction because and only because the TILA violations in the third transaction, rendering the disclosure of the Finance Charge in that transaction inaccurate, also cause the disclosure of the Finance Charge in the fourth transaction to be inaccurate. This position is the converse of Mid–Penn's argument that a refinancing of a rescindable loan cleanses the TILA violations in a previous transaction. The Debtors argue that, in effect, a TILA violation poisons every transaction which follows it. Like Mid–Penn's converse position, we find that this argument sweeps too broadly and cannot be sustained under the facts of the instant case.

In the context of the discussion of this issue, we believe that Mid–Penn's invoca-

tion of the holding in *Porter* that a transaction in which new security is taken is an entirely new transaction rather than a refinancing is appropriate. In light of this holding, the fourth transaction in the instant sequence is properly viewed as an entirely new transaction, and TILA liability is triggered only if there is a disclosure violation in that transaction. The only violation alleged here is that the Finance Charge carried over from the previous transaction is in error. Therefore, the Debtors are arguing that the unquantified error in calculation of the rebate of that Finance Charge, for purposes of the fourth transaction, must also be in error.

The quantification of the alleged error could be significant. The effect of the alleged error could be very small. A tolerance of ⅛ of one (1%) percent is permitted in a disclosure of the annual percentage rule in a transaction. *See* 15 U.S.C. § 1606(c).

■ More importantly, Mid–Penn's alleged error is not a disclosure violation. It is not disputed that the D/S presented in connection with the fourth transaction accurately discloses the amount actually rebated in that transaction. The error allegedly arises from the calculation of the amount of the Finance Charge in the third transaction and hence from the amount from which the rebate is calculated. The argument of the Debtors here is therefore very similar to that rejected by this court and the appellate courts in *Nichols,* and by this court in *In re Jones,* 79 B.R. 233, 237–38 (Bankr.E.D.Pa.1987), *rev'd in part on other grounds sub nom. Jones v. Mid–Penn Consumer Discount Co.,* 93 B.R. 66 (E.D.Pa.1988), that a failure to rebate all unearned interest from a prior transaction triggers a TILA violation, even when the rebate is computed in accordance with applicable state law. The alleged violation arises from a factor (there, application of state law; here, an error in a prior transaction) which is extrinsic to the transaction in which the TILA violation is found to have occurred. We believe that, to be actionable, a violation must arise from a factor

which relates directly to the transaction in issue.

The practical consequences of the Debtors' argument also weigh against its adoption. If the Debtors are correct, an erroneous disclosure of a Finance Charge is treated as an incurable defect which runs with every subsequent recasting of every loan in a series of transactions which follow the erroneous disclosure. Thus, a defect arising in a loan well beyond the three-year limitation of 15 U.S.C. § 1635(f) could, according to the Debtors, be asserted as a violation permitting a rescission of later transitions in a serie. In this way, the purpose of § 1635(f) in barring stale rescissions would be frustrated.

The Debtors rely heavily upon *Steele v. Ford Motor Credit Co.*, 783 F.2d 1016, 1017 (11th Cir.1986); and *Steinbrecher, supra*, in making this claim. However, in *Steele*, the creditor failed to properly apply state law in making a rebate in the very transaction of which rescission was sought. 783 F.2d at 1018–19. Hence, the *Steele* violation was triggered by a factor related directly to actions by the lender in the transaction of which rescission was sought.

Judge Fox, in *Steinbrecher, supra*, 110 B.R. at 165–66, decided that four transactions in a series were rescindable, apparently solely because of an error in calculating the Finance Charge in the first of the transactions in issue. However, Judge Fox reached this conclusion by characterizing each loan in the series as a "refinancing." On the other hand, we refuse to hold that the fourth transaction in issue is a "refinancing" of the third transaction under our reasoning in *Porter, supra*. One edge of the two-edged sword effected by this reasoning is that the right of rescission applies to the entire amount of a new loan if a material violation of the TILA is identified in that transaction. *Compare* 12 C.F.R. § 226.23(f)(2). The other edge of this sword cuts off carrying over TILA violations from a prior transaction into the new transaction.

For all of the reasons set forth herein, we conclude that the Debtors have not alleged the existence of an actionable TILA disclosure violation or a right to rescind in the fourth transaction, simply because a violation existed in the third transaction. Consequently, the Debtors' claims arising from the fourth transaction, all of which relate to a carryover of violations in the third transaction, must fail.

3. THE DEBTORS HAVE NO CLAIMS FOR RECOUPMENT BECAUSE MID–PENN HAS NOT FILED A PROOF OF CLAIM; HOWEVER, THEY APPEAR TO HAVE ACCOMPLISHED THEIR GOAL OF ELIMINATION OF ALL CLAIMS OF MID–PENN BY PREVAILING ON THEIR CLAIMS ARISING FROM THE THIRD TRANSACTION.

■ Finally, the Debtors assert recoupment rights arising out of TILA violations in the first and second transactions, as well as from the third and the fourth transactions, in the series. These claims must fail, first of all, because no proof of claim has been filed by or on behalf of Mid–Penn. Therefore, there is no target claim against which the Debtors can assert any right of recoupment.

In their Reply Brief, the Debtors recognize the gravity of the absence of a proof of claim to their recoupment claims. Bravely, they invoke this court's dislike of delay in their favor by stating that, if the presence of a proof of claim is a prerequisite to these claims, they would have had to have waited until the expiration of the bar date to have known if Mid–Penn was going to file its own claim and hence to determine whether their filing of a claim was necessary. They then suggest that the filing of a claim is a technicality which we can overlook in the interests of assuring prompt administration of this case.

However, it is not necessary for the Debtors to wait until June 11, 1991, to file a proof of claim on behalf of Mid–Penn. Bankruptcy Rule ("B.Rule") 3004 allows a debtor to file a proof of claim for a creditor which has not filed a proof of claim as of the date of the § 341(a) meeting of creditors. The meeting was conducted on March 13, 1991, well prior to the date of

trial of this proceeding. The Debtors therefore could have filed a claim pursuant to B.Rule 3004 without causing any delay in the trial of this proceeding or the administration of this case.

Even if the Debtors were correct in their assertion that compliance with B.Rule 3004 *would* have delayed the disposition of this proceeding and administration of this case, we could not overlook the significance of the filing of a claim by or on behalf of Mid–Penn in the interest of expediency. The relationship between the presence of a proof of claim and a debtor's assertion of recoupment against that claim is more than a procedural nicety. Without a subject which is the necessary focal point of any claim of recoupment, TILA recoupment simply cannot occur. The very nature of recoupment requires the presence of a claim against which to recoup. *See, e.g., Lee v. Schweiker,* 739 F.2d 870, 875–76 (3d Cir.1984). TILA recoupment arises only in response to a claim. *See, e.g., In re Jones,* 122 B.R. 246, 250–51 (W.D.Pa.1990); *In re Dangler,* 75 B.R. 931, 936–37 (Bankr.E.D. Pa.1987); and *Melvin, supra,* 75 B.R. at 959–60. Furthermore, as we recently concluded in *In re Dembo, Dembo v. Comprehensive Foreclosure Services,* 126 B.R. 195 (Bankr.E.D.Pa.1991), the filing of a proof of claim was a prerequisite for the Debtors' invocation of 11 U.S.C. § 506 as well.

The failure of Mid–Penn to file a proof of claim in this case does not appear to have been mere procedural posturing on the part of Mid–Penn. Rather, it appears to be a concession by Mid–Penn that any potential claim it could have filed is doomed, and that therefore Mid–Penn has no valid claim, either unsecured or secured, against the Debtors.

The total of payments on the fourth transaction loan was $2,940. *See* page 768 *supra.* The Debtors paid $1,073.44 on this obligation. If Mid–Penn filed a claim, the consequences of the Debtors' valid rescission of the third transaction loan would

then include at least a $1,000 recoupment penalty.[3] Mid–Penn's right to collect the $620.24 Finance Charge, *see* n. 3 *infra,* would also have to be deducted from any balance owed. *Compare Nichols, supra,* slip op. at 7 (court notes that it is "not clear" how the elimination of "finance and other charges" is totally factored in which a rescinded loan is written into a later, non-rescindable transaction). Although we have held that the failure to excise this uncollectible Finance Charge from the Finance Charge in the new loan transaction is not itself a TILA violation, see pages 771–72 *supra,* nevertheless the Finance Charge imposed in the third transaction must be excised as a function of the rescission of the third transaction. In addition, a deduction of that portion of the Finance Charges in the new transaction attributable to the Finance Charge in the third transaction must be made. This reduction of the Finance Charge in the new loan, when added to the $2,693.68 ($1,073.44 payments, plus $1,000 recoupment, plus $620.24 excess finance charges) already offsetting the $2,940 total of payments, is very likely to eliminate Mid–Penn's claim altogether.

■ Therefore, since Mid–Penn would seemingly have no claim in any event, we apparently need not reach the issue of whether the Debtors could make additional recoupments of $1,000 apiece in light of alleged TILA violations in the first and second transactions. Furthermore, irrespective of whether TILA violations occurred in those transactions, we adhere to our holding in *Melvin, supra,* 75 B.R. at 959–60, that such recoupment claims are impermissible because any proof of claim of Mid–Penn would relate solely to the loan arising from the last of the four transactions. Hence, even if there were a proof of claim filed by or on behalf of Mid–Penn, no recoupment arising from the first or the second transaction would be appropriate. Furthermore, as we have already observed, *supra,* no recoupment can lie due to the

---

**3.** Although the Finance Charge in this loan is disclosed as only $474.74, the increment from the $175.60 property-insurance charge which should have been disclosed as part of this Charge raises the actual Finance Charge to $620.24, resulting in a $1,000 recoupment right under 15 U.S.C. § 1640(a)(2)(A)(ii).

absence of any proof of claim filed by or on behalf of Mid–Penn. We also note that any potential claim of Mid–Penn arising out of the fourth transaction appears to be so negatively impacted by the consequences of the rescission of the third transaction that the Debtors' claims arising out of the fourth transaction appear moot as well.

The Debtors are therefore entitled to only two direct benefits from this litigation: (1) An award of statutory damages of $1,000 due to the failure of Mid–Penn to appropriately respond to the valid rescission of the third transaction loan;° and (2) An award of the reasonable attorneys' fee to their counsel for asserting this successful TILA claim. *See, e.g., Moore, supra,* 117 B.R. at 141–42; *In re Brown,* 106 B.R. 852, 861–62 (Bankr.E.D.Pa.1989); and *Tucker, supra,* 74 B.R. at 932–34. However, they also receive a significant indirect benefit of apparent elimination of all of Mid–Penn's claims as a result of the consequences of the rescission of the third transaction. This indirect benefit apparently renders all of the Debtors' other claims in this proceeding moot.

Mid–Penn's admission that this proceeding is core eliminates any concern about our power to both hear and determine this proceeding. *See In re St. Mary Hospital,* 117 B.R. 125, 131 (Bankr.E.D.Pa.1990). This point is noted because the absence of a proof of claim of Mid–Penn places this proceeding outside the scope of 28 U.S.C. § 157(b)(2)(B), which rendered most of the other numerous proceedings in this court between CLS and Mid–Penn core.

## D. CONCLUSION

Therefore, we will proceed to enter a final Order consistent with the conclusions reached in this Opinion.

## ORDER

AND NOW, this 6th day of June, 1991, upon consideration of the Stipulation of Facts which the parties agreed should constitute the record in this case and the parties' respective Briefs, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in part in favor of the Plaintiff–Debtors, MARY M. WRIGHT and HERBERT M. WRIGHT ("the Debtors"), and against the Defendant, MID–PENN CONSUMER DISCOUNT CO. ("Mid–Penn").

2. It is declared that the Debtors properly exercised their right to rescind the contract of March 27, 1989, in issue, and that therefore this contract is deemed RESCINDED.

3. Mid–Penn shall pay the sum of $1,000.00 to the Standing Chapter 13 Trustee, Edward Sparkman, Esquire, as damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(ii). The said Trustee shall determine whether this sum may be claimed as part of the Debtors' exemptions, and, if he determines that it may be so claimed, he shall forward this sum to the Debtors forthwith.

4. The parties are urged to attempt to agree upon reasonable attorneys' fees and costs which are due to the Debtors' counsel pursuant to 15 U.S.C. § 1640(a)(3). If this matter is not resolved within fifteen (15) days, the Debtors' counsel may, within thirty (30) days of this Order, file a Motion requesting such fees, said Motion to be procedurally in conformity with *In re Meade Land & Development Co.,* 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates,* 78 B.R. 41 (Bankr.E.D.Pa.1987). However, if the Debtors' counsel has made a reasonable demand for fees which is refused, the said counsel may recover compensation for time spent on the fee application as well.

5. All of the other claims of the Debtors against Mid–Penn are DENIED.