In the Matter of Rosetta PORTER.

Rosetta PORTER
v.
MID–PENN CONSUMER DISCOUNT COMPANY and Mid–Penn National Company.

Rosetta PORTER
v.
MID–PENN CONSUMER DISCOUNT COMPANY and Mid–Penn National Company.

Civ. A. Nos. 91–1144, 91–2473.

United States District Court, E.D. Pennsylvania.

June 28, 1991.

Reconsideration Denied July 23, 1991.

Paul A. Brooks, Community Legal Services, Philadelphia, Pa., for Rosetta Porter.

Edwin Seave, Philadelphia, Pa., for Mid–Penn Consumer Discount Co.

Arthur J. Matusow, Philadelphia, Pa., for Mid–Penn Nat. Co.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Rosetta Porter has filed this appeal from an order of the bankruptcy court, finding in favor of Mid–Penn Consumer Discount Co. and Mid–Penn National Company. Porter originally filed an adversary action against Mid–Penn alleging, *inter alia*, various violations of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* The bankruptcy court found that Mid–Penn complied with TILA throughout its dealings with Porter.

Porter asks this court to review two main issues on appeal: (1) whether the subject transactions qualify as exempt transactions under Regulation Z, 12 C.F.R. § 226.23(f)(2); and (2) whether the lender violated TILA by retaining a prior mortgage interest several days after Porter's rescission period expired, without disclosing the retention. Because we find that the subject transactions constitute exempt transactions within the meaning of Regulation Z, it is unnecessary to reach the second issue.[1]

## FACTS

At trial, the parties submitted a joint stipulation of the events leading to this proceeding. The bankruptcy court's opinion presents these facts in complete detail. *In re Porter,* 122 B.R. 933, 935–937 (Bkrtcy.E.D.Pa.1991). A summary follows:

Rosetta Porter received three separate consumer loans over a three year period from the lender. Two apparently separate companies advanced credit to Porter: Mid–Penn Consumer Discount Co. ("Mid–Penn Consumer") and Mid–Penn National Company ("National").[2] Mid–Penn Consumer first extended credit to Porter in 1986 and received a mortgage interest in Porter's principal dwelling as security. Porter entered into a second transaction with Mid–Penn Consumer on May 18, 1987 (the 1987 transaction). In this transaction, Porter received a financed amount sufficient to pay off the prior account and an additional sum. Mid–Penn received an additional mortgage interest in Porter's home to secure this extension of credit. On May 27, 1987, Mid–Penn Consumer executed a satisfaction piece for the mortgage taken during the 1986 transaction.

Porter entered into a third consumer loan transaction with National on April 8, 1988 (the 1988 transaction). In this transaction, National satisfied Porter's prior account with Mid–Penn Consumer and advanced an additional sum. As security, National received a mortgage interest in Porter's home. National also executed a satisfaction piece on the mortgage securing the 1987 loan, on April 24, 1988.

Porter's appeal centers around Mid–Penn's conduct after the 1987 and 1988 transactions. Mid–Penn gave Porter a rescission form for each of the 1987 and 1988 transactions. Each tracked Rescission Model Form (General) H–8, published in the Appendix to 12 C.F.R. § 226, which disclosed that Porter had the right to rescind the entire transaction. Mid–Penn did not provide her with form H–9, the model form designed for refinancing transactions. Porter filed a petition for relief under

1. Because of an uncertainty arising out of the bankruptcy court's order of January 7, 1991, Porter filed a second appeal, Civil Action No. 91–2473, which includes the same issues in the appeal presently before this court. The two cases have been consolidated.

2. Except where specificity is required, the two companies will be referred to simply as "Mid–Penn."

Chapter 13 of the Bankruptcy Code on March 28, 1990. Mid–Penn Consumer filed a proof of claim on May 2, 1990. On or about May 10, 1990, Porter sent notices to Mid–Penn indicating her intention to rescind the 1987 and 1988 transactions. Mid–Penn declined to honor Porter's requests, taking the position that the period for rescission had expired three days following the consummation of each transaction. National filed an objection to confirmation of Porter's plan on July 31, 1990.

On the same day, Porter filed the complaint leading to this adversary proceeding. It alleged, *inter alia*, that (1) Mid–Penn Consumer failed to properly act upon a rescission by Porter of the 1987 transaction, and (2) that National failed to act on the similar rescission of credit by Porter extended in the 1988 transaction. Porter asserted that in both counts, Mid–Penn violated TILA. Porter sought to receive statutory penalties provided for TILA violations and to require Mid–Penn to effect her rescission of the subject transactions. The bankruptcy court denied Porter's claims on each count. We reverse and remand.

## DISCUSSION

■ Sitting as an appellate court when reviewing bankruptcy cases, we review the bankruptcy court's findings of fact for clear error. Conclusions of law are subject to plenary review. *Brown v. Pennsylva-*

*nia State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Appellant appeals only issues of law. Jurisdiction arises under 28 U.S.C. § 158(a).

■ Congress enacted the Truth in Lending Act in 1968 to promote the informed use of consumer credit. *See* 15 U.S.C. § 1601. Congress delegated authority to the Federal Reserve Board to effectuate TILA's purpose by implementing regulations. *See* 15 U.S.C. § 1604(a). As a result, the Board promulgated Regulation Z. *See generally* 12 C.F.R. § 226. The Federal Reserve Board also issues staff commentary. When the statute or regulation does not expressly govern a disclosure issue, courts may look to the commentary for guidance. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 560, 100 S.Ct. 790, 794, 63 L.Ed.2d 22 (1980).

Section 125(a) of TILA permits a consumer debtor to rescind a loan transaction in accordance with Regulation Z.[3] Consumers may rescind a credit transaction within three business days of its consummation where the lender acquires a mortgage interest in the debtor's principal dwelling as security. 12 C.F.R. § 226.23(a). Where a lender fails to provide a notice of this right, in compliance with Regulation Z, the consumer's period for rescission extends to three years. 12 C.F.R. § 226.23(a)(3). To satisfy Regulation Z's disclosure requirements, the lender must clearly and conspic-

---

3. 15 U.S.C. § 1635(a) states in pertinent part:

§ 1635. Right of rescission as to certain transactions

Disclosure of obligor's right to rescind

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board,

of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

Regulation Z, 12 C.F.R. § 226.23(a)(3) states:

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

uously disclose all substantive requirements. These requirements include the effects of rescission and the retention of a security interest in the consumer's principal dwelling.[4] 12 C.F.R. § 226.23(b). To assist lenders, the Federal Reserve Board promulgated two model rescission notices which comply with Regulation Z. *See* 12 C.F.R. § 226, Appendix H–8 and H–9. The H–8 form discloses a debtor's right to rescind when entering into a new loan transaction while the H–9 form discloses a debtor's rights when entering into a refinancing transaction.

The debtor's right to rescind, however, does not apply to every consumer loan transaction. Regulation Z also exempts certain types of refinancing transactions from rescission. Section 226.23(f) provides in pertinent part:

> (f) Exempt transactions. The right to rescind does not apply to the following:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) A refinancing ... by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing.

(emphasis added)

■ The first issue for review is whether the 1987 and 1988 consumer loans qualify as exempt transactions under Regulation Z, when the lender extends new credit which satisfies an existing debt, advances new money to the consumer, and receives a new mortgage interest in the debtor's principal dwelling. Porter contends that the 1987

and 1988 transactions fall within the purview of § 226.23(f)(2). As a result, she argues that her rescission right under Regulation Z applied only to the *new value* portion of the extended credit. Because Mid–Penn indicated in its notices that she could rescind the *entire extension of credit* in each transaction, Mid–Penn failed to give Porter the required notice. Thus, she concludes that Mid–Penn did not comply with the terms of § 226.23(b)(4) of Regulation Z and the bankruptcy court erred when it found that Mid–Penn's use of the H–8 general rescission form was appropriate.

In reaching its conclusion, the bankruptcy court found that the 1987 and 1988 transactions did not constitute a Regulation Z refinancing under § 226.23(f)(2). Referring to the first sentence of this provision, the court observed that a transaction is not "already secured" by a mortgage in place where the same lender secures a subsequent advance in credit by acquiring a *new* mortgage interest. *See* 12 C.F.R. § 226.-23(f)(2); *In re Porter*, 122 B.R. at 941. The subject transaction it found, therefore, fell outside the scope of a Regulation Z exempt transaction. The bankruptcy court then concluded that Regulation Z entitled Porter to a right to rescind the subject transactions in their entirety because § 226.23(f)(2) did not limit this right to the additional amount advanced. Since Mid–Penn disclosed this right in the notice given to Porter, the court concluded that Mid–Penn complied with TILA's requirements.

To counter this position, Porter argues that the bankruptcy court erred in focusing upon the fact that a new, second mortgage instrument was executed in determining that the transaction was not a refinancing transaction. She argues that the transaction, whereby she refinanced an existing

---

**4.** Section 226.23(b) provides:

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

debt and received additional advances, fall within the scope of § 226.23(f). We agree.

First, the 1986 and 1987 transactions between Mid–Penn and Porter fits squarely within the plain meaning of § 226.23(f)(2). While both transactions refinanced a prior "extension of credit already secured" by a mortgage on Porter's principal dwelling, the bankruptcy court apparently construed the phrase "extension of credit" in the first sentence of § 226.23(f)(2) as referring to the *subsequent* transaction, which refinanced the prior obligation. The sentence's grammatical structure, however, does not support this construction.[5] Clearly, the exception is designed to exclude from the disclosure and rescission requirement only those transactions where disclosure would be unnecessary, i.e. where only an existing debt is refinanced with no additional encumbrances placed on the subject property. When an additional encumbrance, in the form of an increased mortgage interest is given to the creditor, Congressional policy favoring complete disclosure would be defeated by finding that such a transaction failed to trigger the disclosure and rescission rights.

Moreover, TILA § 125(e) speaks of the "extension of credit" as existing prior to the refinancing transaction. The disputed provision, § 226.23(f)(2) of Regulation Z, implements § 1635(e). It provides:

> § 1635. Right of Rescission as to certain transactions. (e) Exempted Transactions; reapplication of provisions
>
> This section does not apply to—
>
> \* \* \* \* \* \*
>
> (2) a transaction which constitutes a refinancing (with no new advances) of the principal balance then due and any accrued and unpaid finance charges of an *existing* extension of credit by the

same creditor secured by an interest in the same property;

(emphasis added)

Second, the history of § 226.23(f) suggests that the Federal Reserve Board intended to place refinances, with no new advances but otherwise secured by new mortgages, outside the scope of rescission. In 1986, the Board amended § 226.23(f) to make this intention more clear. Prior to 1986, it provided:

> (f) Exempt transactions. The right to rescind does not apply to the following:
>
> . . . .
>
> (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. If the new amount financed exceeds the unpaid principal balance plus any unearned unpaid finance charge on the existing debt, this exemption applies only to the existing debt and its security interest.

12 C.F.R. § 226.23(f) (superseded). In 1986 it was amended to provide:

> (f) Exempt transactions. The right to rescind does not apply to the following:
>
> . . . .
>
> (2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. *The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.*

(emphasis added)

12 C.F.R. § 226.23(f). The Board stated that "these revisions were made to more

---

**5.** The bankruptcy court decided this issue based on its own decision in *In re Melvin,* 75 B.R. 952 (Bankr.E.D.Pa.1987). *Melvin* involved a similar series of consumer loan transactions, with a new mortgage supplanting a prior mortgage as security. The bankruptcy judge found that the transaction, analogous to the 1987 and 1988 transactions *sub judice,* did not constitute an exempt refinancing transaction within the meaning of Regulation Z. There, as here, the bankruptcy court compared "the instant transaction [referring to the final transaction which satisfied a prior obligation to pay] with an 'extension of credit already secured'...." *Melvin,* 75 B.R. at 957.

clearly state the rule that, where a transaction involves new money, *only the new money is rescindable.*" Truth in Lending; Right of Rescission, 51 Fed.Reg. 45,299 (1986) (emphasis added) Instead of reading this second sentence as confining a consumer's rescission right to the additional amount financed, the bankruptcy court's reading of the regulation would permit, in other circumstances, rescission of the entire transaction, a result clearly not intended by the Federal Reserve Board.

Third, interpreting the regulations to permit the consumer to rescind the entire transaction, under these circumstances, would fail to further TILA's underlying purpose. Congress granted consumers a rescission right to provide a period of time for reexamining a decision which places the consumer's home at risk of forfeiture. *See* 51 Fed.Reg. 45,297 (1986). Consumers do not require a 'cooling off period' when they refinance an identical obligation already secured by their home. Exempting these loans from the scope of rescission poses no *greater* risk to the consumer than that created by the existing loan. However, where as here the refinancing includes additional advances, and the creditor secures this new money by acquiring a greater mortgage, § 226.23(f) permits the consumer to rescind that portion which creates an *added* risk to the consumer's home. Differentiation between these risks, we find, was the reason the Federal Reserve Board promulgated different rescission forms to be used for new extensions of credit and additional advances of credit.[6]

■ One additional consideration remains. The subject transactions qualify as exempt refinancings if and only if the same creditor advances the prior extension of credit and the subsequent credit to the

consumer. 12 C.F.R. § 226.23(f)(2). Congress has expressly restricted the scope of the 15 U.S.C. § 1635(e)(2) in this fashion. The 1987 transaction satisfies this same creditor requirement. Mid–Penn Consumer extended Porter both the 1986 loan and the 1987 refinancing loan. In the 1988 transaction, however, Mid–Penn National advanced the credit which satisfied Porter's prior outstanding account with Mid–Penn Consumer. An issue of fact remains as to whether Mid–Penn National and Mid–Penn Consumer constitute the "same creditor" for purposes of § 226.23(f)(2). Since the bankruptcy court never addressed this issue, we remand the case on this point to determine whether Porter is entitled to rescind the 1988 transaction.

■ For the foregoing reasons, we hold that a consumer loan transaction constitutes an exempt transaction under § 226.23(f)(2) of Regulation Z when the lender extends new credit to satisfy an existing debt, advances new money to the consumer, and receives a new mortgage interest in the debtor's principal dwelling. Because Mid–Penn failed to provide proper notice, § 226.23(a)(3) of Regulation Z permits Porter to rescind the new value portion of the 1987 refinancing transaction within three years of its consummation. *See also* 15 U.S.C. §§ 1635(a), (f). This extended period will also apply to the 1988 transaction should the bankruptcy court find that Mid–Penn Consumer and Mid–Penn National constitute the same creditor under § 226.23(f)(2). We find that Porter properly rescinded the 1987 transaction within the extended statutory period.

We will remand this action to the bankruptcy court for a determination of Porter's remedies, flowing from Mid–Penn's violation of TILA in the first refinancing

**6.** We agree with the bankruptcy court that the second sentence of the H–9 Rescission Form for refinancing could support its construction of § 226.23(f). This sentence states: "we acquired a mortgage in your home under the original transaction *and will retain that mortgage* in the new transaction." *See* 12 C.F.R. § 226, Appendix H–9 (emphasis added). When read in context with the H–9 form, a § 226.23(f)(2) "refi-

nancing" suggests that the prior mortgage remain in place to secure the subsequent loan. The Commentary indicates however that the Board intended these forms to serve merely as examples. "The notices in Appendix H provide models that creditors *may* use in giving notice." 12 C.F.R. § 226.23(b)(2) Commentary (emphasis added).

transaction, and for further proceedings to determine whether the two defendants constitute the "same creditor", so that Mid–Penn's liability on the second refinancing transaction may be established.

## ORDER

The judgment of the bankruptcy court in *In re Rosetta Porter, Porter v. Mid–Penn Consumer Discount Co. and Mid–Penn National Co.,* 122 B.R. 933, entered January 7, 1991 is REVERSED and the cause is REMANDED for entry of judgment and further proceedings in accordance with this opinion.

IT IS SO ORDERED.

## ORDER ON MOTION FOR RECONSIDERATION

On June 28, 1991, this court issued a Memorandum Opinion and Order reversing the decision of the Bankruptcy Court in this matter and remanding the matter to the Bankruptcy Court for further proceedings. Presently before the court is a motion by defendants Mid Penn Consumer Discount Co. and Mid Penn National Co. for reconsideration of our June 28, 1991 Order. Having reviewed the memoranda of counsel, we see no cause for reconsideration of our prior order.

The motion of defendants Mid Penn Consumer Discount Co. and Mid Penn National Co. for reconsideration of our June 28, 1991 Order is, therefore, DENIED.

IT IS SO ORDERED.