**In re Christopher & Julie MICHEL, Debtors.**

**Christopher & Julie MICHEL, Plaintiffs,**

**v.**

**BENEFICIAL CONSUMER DISCOUNT CO. and Edward Sparkman, Trustee, Defendants.**

**Bankruptcy No. 91–12560S.
Adv. No. 91–1000S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 18, 1992.

Marian C. Nowell, Community Legal Services, Inc., Philadelphia, Pa., for debtors.

Francis J. Sullivan, Sullivan and Sullivan, Levittown, Pa., for Beneficial Consumer Discount Co.

Edward Sparkman, Philadelphia, Pa., defendant-trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding again raises the controversy over the appropriate rescission notice form to be used by a creditor, under the dictates of the federal Truth–in–Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("the TILA"), when that creditor takes security against a borrower's residential real estate in a transaction which is preceded by an earlier transaction between the parties, the balance of which is paid off in the new loan.

The last decision addressing this controversy, *In re Porter,* 129 B.R. 397, 400–03 (E.D.Pa.1991) (*"Porter II"*) (a case appealed, argued, and awaiting decision before the Third Circuit Court of Appeals), reversed this court's decision in *In re Porter,* 122 B.R. 933, 939–41 (Bankr.E.D.Pa.1991) (*"Porter I"*), and held that a notice appropriate in a "refinancing" must be utilized by the creditor in such a transaction. *Porter I* followed our earlier decisions in *In re Jones,* 79 B.R. 233, 235, 239–41 (Bankr. E.D.Pa.1987), *rev'd in part on other grounds sub nom. Jones v. Mid–Penn Consumer Discount Co.,* 93 B.R. 66 (E.D.Pa.1988); *In re Melvin,* 75 B.R. 952, 954–57 (Bankr.E.D.Pa.1987); and *In re Tucker,* 74 B.R. 923, 928–31 (Bankr.E.D.Pa. 1987), and held that, when a creditor takes a new security interest in the borrower's residential real estate in a closed-end loan, the transaction must be treated as an entirely new loan rather than as a "refinancing." In the instant factual pattern, where a security interest in real estate was taken for the first time in the second of two open-end loan transactions, we conclude that, even under the holding in *Porter II,* the transaction cannot be treated as a "refinancing" in which a previous security interest is merely extended rather than made anew.

Therefore, we hold that Defendant BENEFICIAL CONSUMER DISCOUNT CO.

("Beneficial") violated the TILA when it provided a rescission notice to CHRISTO-PHER & JULIE MICHEL ("the Debtors") in an open-end transaction which is appropriate only in a transaction similar to a "refinancing" transaction. We also reject Beneficial's arguments that this TILA violation does not merit rescission, and we hold that the adverse consequences normally following a valid rescission which the creditor has refused to honor follow, *i.e.,* elimination of any security interest in the Debtors' residence, elimination of any finance and other charges, and statutory damages of $1,000 both as a recoupment against Beneficial's claim and an affirmative recovery in light of Beneficial's failure to honor their valid rescission. *See, e.g., In re [Joyce] Brown,* 134 B.R. 134, 145–47 (Bankr.E.D.Pa.1991); *In re [Elizabeth Marie] Brown,* 106 B.R. 852, 861–63 (Bankr. E.D.Pa.1989); and *Tucker, supra,* 74 B.R. at 932–34. We also hold that the Debtors are entitled to avoid Beneficial's lien on their household goods under 11 U.S.C. § 522(f)(2). However, finding no evidence of deceit or overreaching on the part of Beneficial, we decline the Debtors' requests that their indebtedness to Beneficial be eliminated entirely and that Beneficial be required to refund all payments made to it on account of this loan. Therefore, Beneficial is left with an unsecured claim of $1,688.65.

## B. PROCEDURAL HISTORY

The Debtors filed the underlying instant joint Chapter 13 bankruptcy case on May 7, 1991. A confirmation hearing was scheduled on October 31, 1991, and was continued until December 19, 1991, with a hearing on a Motion filed by Defendant EDWARD SPARKMAN, TRUSTEE, the Standing Chapter 13 Trustee ("the Trustee"), on November 6, 1991, to dismiss this case ("the Trustee's Motion"). The ground for the Trustee's Motion, in his parlance, was that the Debtors' proposed plan was not "feasible," *i.e.,* the secured claims exceeded the payments contemplated in the plan. *See In re Fricker,* 116 B.R. 431, 436–37 (Bankr.E.D.Pa.1990).

On November 8, 1991, the Debtors filed the adversary proceeding before us ("the Proceeding"). This was followed by their filing a motion to avoid Beneficial's nonpossessory, nonpurchase-money security interest in their household goods ("the Debtors' Motion") on November 12, 1991. The Debtors' Motion was listed for a hearing on December 17, 1991, and the Proceeding was listed for trial on December 19, 1991. The court agreed to continue the confirmation hearing, the hearings on the Trustee's Motion and the Debtors' Motion, and the trial of the Proceeding to January 21, 1992, on the condition that the trial would not be continued further.

On January 21, 1992, the parties appeared and agreed that the Proceeding and the Debtors' Motion would be decided on a Joint Pretrial Statement including a Stipulation of facts, and Briefs filed by the respective parties on or before February 20, 1991 (the Debtors), and March 9, 1992 (Beneficial). The confirmation hearing and the hearing on the Trustee's Motion were continued to March 24, 1992.

## C. FACTUAL HISTORY

The Debtors are a young (aged 27 and 25) married couple who own the home in which they reside with their two daughters at 5036 "F" Street, Philadelphia, PA 19124 ("the Home"). The Schedules indicate that the Husband–Debtor owns and operates a hot-dog stand to support the family.

On November 18, 1988, the Debtors and Beneficial entered into a "credit line account agreement" with a limit of $2,500.00. As security for payment on the account, the Debtors granted Beneficial a security interest in a 1989 Yamaha all-terrain vehicle (ATV) ("the Vehicle") apparently purchased with the loan proceeds.

On June 8, 1989, Debtors and Beneficial entered into the transaction in issue, a further "credit line account agreement" with a limit of $4,900.00. In that transaction, Beneficial paid off the November, 1988, loan balance of $2,978.45, collected recording fees and costs of $60.00, charged the Debtors $145.33 for life and personal property insurance, and gave Debtors a check

for "new money" in the amount of $1,861.55. Security taken by Beneficial in this transaction included security interests in the Debtors' household goods, including televisions, radios, a stereo, and a VCR; retention of its security interest in the Vehicle; and, for the first time, a mortgage on the Home.

On May 6, 1991, the day before their bankruptcy filing, the Debtors' then-counsel sent a letter to Beneficial purporting to rescind the loan transaction of June 8, 1989, and demanding that Beneficial satisfy its "security interests" in the Debtors' "property;" desist from making claims for finance charges; and return all "money or property" received by Beneficial "in connection with these transactions."

On May 24, 1991, Beneficial's then-counsel cryptically responded by sending a copy of the Notice of Right to Cancel received by the Debtor in the transaction to the Debtors' counsel and stating that "[w]e . . . trust that our mortgage will be provided for under the Plan."

The only violations of the TILA and its pertinent Regulation Z, 12 C.F.R. § 226.1, *et seq.*, alleged by the Debtors in their Complaint arise out of the contents of the notice of the Debtors' right to rescind this transaction. That notice is therefore reproduced in pertinent part as follows:

### NOTICE OF RIGHT TO CANCEL

The words you, your and yours refer to all persons signing the Revolving Loan Agreement as a Borrower whose principal dwelling will be subject to a lien or to any other person whose principal dwelling is subject to the lien. The words we, our and us refer to the Lender.

### Right to Cancel

You are entering into a transaction which will increase the credit line on your open end credit Revolving Loan Account. We obtained a lien by means of a:
☐ Mortgage ☐ Deed of Trust ☐ ————————————
*describe*

on your home as security for your account and increasing the credit line will increase the amount of this lien. You have a legal right under federal law to cancel the increase of the credit line, without cost, within 3 business days from whichever of the following events occurs last:

(1) the date of the increase of the credit line, which is __June 8th__, 19 89 ; or
(2) the date you received your Truth in Lending disclosures (Revolving Loan Agreement); or
(3) the date you received this Notice advising you of your right to cancel the increase of your credit line.

If you cancel the transaction, your cancellation will apply only to the increase in the credit line, and to the lien that resulted from that increase. It will not affect the amount that you presently owe or the lien we already have on your home. Within 20 calendar days after we receive your Statement of Cancellation of the credit line increase, we must take the steps necessary to reflect the fact that any increase in the lien on your home has been cancelled. We must also return to you any money you have given to us or anyone else in connection with this increase.

You may keep any money or property we have given you with respect to the credit line increase until we have done the things mentioned above, but you must then offer to return to us the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address shown below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

### How to Cancel
If you decide to cancel this transaction, you may do so by notifying us in writing, at

**Beneficial Consumer Discount Co**

---
*Lender's Name*

**4807 Edgmont Ave**

---
*Street Address*

**Brookhaven, Pa, 19015**

---
| *City* | *State* | *Zip* |

You may use any written statement that is signed and dated by you and states your intention to cancel. In place of a written statement, you may use this Notice by dating and signing it below. You may keep one copy of this Notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice or statement of cancellation no later than midnight of June 12th, , 19 89 (which is the 3rd business day following the latest of the three events listed above). If you send or deliver a written notice to cancel some other way, you must deliver that notice of cancellation to us at the above address no later than the time specified.

---

On June 13, 1989, the Debtors executed a Statement indicating that they did not wish to rescind the transaction.

The Debtors' Chapter 13 Plan, filed on May 28, 1991, provides for payments of $115 for 60 months. Specific reference is made in the plan to the Debtors' intention to cure arrearages and future payments to the first mortgagee on the Home, GMAC Mortgage Corporation of PA., and to pay certain designated allowed tax claims. The failure of the Plan to mention Beneficial appears to reflect an intention to consider its claims as totally unsecured.

On or about August 21, 1991, Beneficial filed a Proof of Claim reciting $4,688.20 as the principal amount of its indebtedness and $1,820.97 as arrearages which, with certain "additional charges," amounted to a total secured claim in the amount of $6,509.17.

The parties admitted into the record Beneficial's Record of Payments of the June 8, 1989, "credit line." This Record reflects remittances of $1,181.00 and an $825 credit for the sale of the Vehicle on June 27, 1991, which total payments of $2,006.00.

**D. DISCUSSION**

1. IN LIGHT OF THE FACT THAT THE INSTANT TRANSACTION IS AN OPEN-END LOAN IN WHICH SECURITY WAS TAKEN IN THE DEBTORS' HOME FOR THE FIRST TIME, THE USE OF A NOTICE OF THE DEBTORS' RIGHT TO RESCIND INDICATING THAT BENEFICIAL WAS MERELY INCREASING A PRIOR SECURITY INTEREST ON THE HOME WAS IMPROPER.

■ The Debtors' claims to a right of rescission are based upon 15 U.S.C. §§ 1635(a), (b), which provide as follows:

**SECTION 125—Right of Rescission as to Certain Transactions**

(a) Except as otherwise provided in this section, in the case of *any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest,* including any such interest arising by operation of law, *is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight*

*of the third business day following the consummation of the transaction of the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.* The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. *The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.*

*(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.* If the creditor has delivered any property to the obligor, the obligor may retain possession of it. *Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor,* except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. *The procedures prescribed by this subjection shall apply except when otherwise ordered by a court* (emphasis added).

Regulation Z fleshes out the creditor's obligations regarding the provision of a notice of right to rescind an open-end credit transactions thusly, in 12 C.F.R. § 226.15(b):

(b) *Notice of Right to Rescind.* In any transaction or occurrence subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall identify the transaction or occurrence and clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind, as described in paragraph (a)(1) of this section.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

Appendix G to Regulation Z includes several model forms. Model forms G–5 through G–9 prescribe various forms for notices of right to rescind in open-end credit accounts in various settings, as follows:

G–5—When Opening an Account

G–6—For Each [subsequent] Transaction

G–7—When Increasing the Credit Limit

G–8—When Adding a Security Interest

G–9—When Increasing the Security.

The parties do not dispute that the notice of right to rescind provided to the Debtors in the pertinent transaction tracked Model Form G–6. There is little doubt that it should have tracked G–8 or G–9, because Beneficial was significantly adding to or increasing its security when it added a security interest in the Home to its security package for the first time and was adding to its security interests on June 8, 1989. The only issues would therefore appear to be whether Beneficial's use of the incorrect form is a serious enough error as to trigger a violation of 15 U.S.C. § 1635(a).

Beneficial's first line of defense is to analogize from the result reached in *Porter II*, which it argues is supported by language appearing in *In re Steinbrecher*, 110 B.R. 155, 165–66 n. 20 (Bankr.E.D.Pa.1990) (FOX, J.). However, it must be recalled that *Porter II* and *Steinbrecher*, as well as the contrary decisions rendered by this court in *Porter I, Jones, Melvin*, and *Tucker*, reiterated in *In re Wright*, 127 B.R. 766, 771–772 (Bankr.E.D.Pa.), *aff'd*, 133 B.R. 704 (E.D.Pa.1991), all arose in analysis of a series of closed-end loan transactions. In such transactions, only two Model Forms are pertinent, H–8 (General) and H–9 (Refinancing). Also, it is important to note that, while the TILA itself has one section relating to the right of rescission in all consumer transactions, Regulation Z contains different provisions relating to rescission of open-end and of closed-end transactions in 12 C.F.R. § 226.15 and § 226.23, respectively.

The narrow issue presented in *Porter* is interpretation of 12 C.F.R. § 226.23(f)(2). We note that a 1988 amendment to § 226.-23(f)(2) may distinguish the results in *Jones, Melvin*, and *Tucker* which preceded this amendment. *See Porter I*, 122 B.R. at 940. In its present form, § 226.23(f)(2) reads as follows:

(f) *Exempt transactions.* The right to rescind does not apply to the following:

. . . . .

(2) A refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling. The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

In *Porter I*, we held that, when a creditor takes a new security interest in the entire amount of a new loan and satisfies a similar security interest taken in a prior similar transaction, the new transaction is not "already secured" by the mortgage on the consumer's residence from the prior trans-

action, and that, in such transactions, the use of the H–8 Model Form rather than the H–9 Model Form is appropriate. *Id.* at 941. We were particularly influenced by the language of Model Form H–9, which states that

We acquired a [mortgage/lien/security interest] [on/in] your home under the original transaction and will retain that [mortgage/lien/security interest] in the new transaction.

In a transaction in which a new mortgage is taken which covers the entire new loan, as in the *Porter* transaction, the statement that a prior mortgage is being retained as security in the new transaction appears to us to be patently inaccurate and misleading. Therefore, we concluded that the use of a Model Form H–8, by the creditor in *Porter*, which describes the new loan as an entirely new transaction, was appropriate. *Id.* at 941. This conclusion is buttressed by the fact that, if a creditor treats the new transaction as a new loan, the consumer's right of rescission, in the new transaction, would apply to the *entire* balance, not just the "extent the new amount financed exceeds the unpaid principal balance on the existing debt." 12 C.F.R. § 226.23(f)(2).

In *Porter II*, the district court, admittedly with considerable logic, read § 226.-23(f)(2) as defining any subsequent loan in a series of sequential loan transactions, each of which are secured by mortgages, as "refinancings" subject to that section. 129 B.R. at 402–03. We submit that the logic breaks down a bit when the *Porter* creditor is found liable for a TILA violation, apparently justifying rescission, because it was prepared to enhance the consumer's rights by treating the new loan as a new transaction which could be rescinded in its entirety. Also, the result sanctions the use of Model Form H–9 in a setting to which its above-quoted language appears inaccurate and misleading.

We believe that the issue dividing *Porter II* and *Porter I* is a difficult one. However, the instant issue is different, and it is debatable whether *Porter II* supports or contradicts Beneficial's position. In one sense, the *Porter II* decision might be said

to support Beneficial's argument that any new transaction between parties who have an outstanding loan at the time is a "refinancing," and that the notice utilized by Beneficial is proper in a "refinancing" transaction. However, less comforting to Beneficial is the result in *Porter II* that use of the "wrong" notice of right of rescission form, even when its effect is to enhance a consumer's rights, may trigger a consumer's right to rescind.

However interesting the *Porter* issues are, they are not the same issue as are in question here. The instant transactions were open-end credit transactions, which are distinct from closed-end transactions in two important ways: (1) the choice of Model Forms is more diverse; and (2) they are controlled by § 226.15(f), not § 226.23(f), and § 226.15 contains no analogue to § 226.23(f)(2). There is also a significant factual distinction between *Porter* and this case: Beneficial only took a security interest in the Home in the instant second (and significant) transaction. *Porter, Jones, Melvin,* and *Tucker* all involved a series of loans, *all* of which were secured by residential mortgages.

All of these distinguishing factors weigh heavily against Beneficial. The inapplicability of § 226.23(f)(2), which has no pertinence to an open-end credit transaction which contemplates a series of loans, is crucial. The specific language of § 226.-23(f)(2) was the *sole* basis for the differences of the reasoning by district court and by Judge Fox in *Steinbrecher* from the reasoning of this court in *Porter I* and *Tucker,* respectively.

An open-end credit line contemplates constant "refinancing." It is only when the terms of the credit line are changed that a new set of disclosures to a borrower in such a type of credit-extension is necessary. However, since a change in terms of the credit line *is* deemed critical in an open-end credit relationship, a larger menu of Model Forms to accurately reflect these changes is deemed necessary.

The changes in the credit line terms effected in the instant transaction were very substantial. For the first time, the Debt-ors gave the Home as security and were entitled to a right of rescission. The significance of these changes demanded an accurate disclosure.

The Model Form G-6 utilized by Beneficial in the instant transaction was patently inaccurate. It was *not* true that the Debtors were simply (as that form states) increasing their credit line. It was *not* true that Beneficial already had a mortgage on their home which it was merely increasing. It was *not* true that cancellation, under these circumstances, would only apply to the increase in their credit line. This last inaccurate statement is critical, because, unlike the *Porter* creditor, whose actions enhanced the consumer's rights, Beneficial's disclosure purported to reduce the Debtors' right to rescind the entire transaction. Therefore, under the reasoning of *Porter II,* as well as that of *Porter I, Jones, Melvin,* and *Tucker,* we must conclude that Beneficial violated the TILA in providing the Debtors with an inaccurate and misleading notice of right to rescind this transaction.

## 2. BENEFICIAL'S FAILURE TO UTILIZE A PROPER NOTICE OF THE DEBTORS' RIGHT TO RESCIND ALLOWS THE DEBTORS TO RESCIND THIS TRANSACTION AT THIS TIME.

Beneficial presents several other arguments in defense of the Debtors' right to rescind and receive the considerable benefits which would normally flow from Beneficial's refusal to acknowledge the validity of the Debtor's rescission within twenty (20) days.

Firstly, Beneficial claims that any violation is not "material," combining this with a contention that none of the Model Forms were quite suited for the instant transaction and therefore use of G-6 Model Form was the best available alternative. We disagree with the latter assertion. The Model Form G-8 appears quite suited to the instant transaction. Assuming *arguendo* that it is not, it must be recalled that the forms are only models and that, if the creditor structures a transaction differ-

ently than any of the models contemplate, then the creditor is obliged to revise the models to fit the transaction. Supplying the "least inaccurate" model form cannot guarantee an exemption from TILA liability.

■ As we emphasized in *Tucker*, 74 B.R. at 930, 931; and *Melvin*, 75 B.R. at 956, the TILA allows rescission if there are *either* violations in the rescission form *or* material disclosure violations in the disclosure form which are acted upon by the borrower within three years after the consummation of the transaction. *See* 15 U.S.C. § 1635(f). The litany of "material disclosures" set forth in 15 U.S.C. § 1602(u) only references disclosures which appear in a disclosure statement, not those which would appear in a notice of right to rescind. Therefore, the prerequisite of "materiality" does not attach to the contents of the notice of the right to rescind. *Any* deficiency in that notice triggers a right to rescind.

This conclusion is supported by the result in *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 903–05 (3d Cir.1990). There, the Court held that a violation of 12 C.F.R. § 226.23(c) was not such a violation of the TILA as would trigger rescission, as would a violation of § 226.23(b). Beneficial's instant violations arise under the closed-end analogue of § 226.23(b), § 226.-15(b), and not under § 226.15(c), the analogue of § 226.23(c). Therefore, the violations in issue subject the transaction to rescission. This is especially so because the inaccuracies in the notice of the right to rescind are several and substantial. *Cf. Brown, supra,* 106 B.R. at 857–58 (even a technical violation of the TILA may trigger rescission).

3. THE DEBTORS' BANKRUPTCY FILING DOES NOT SAVE BENEFICIAL FROM THE SUBSTANTIAL CONSEQUENCES OF FAILING TO HONOR THE DEBTORS' VALID RESCISSION.

■ Beneficial also argues that it should be spared the panoply of adverse consequences for its failure to respect the Debt-

ors' valid rescission because the TILA prohibits multiple penalties arising out of single transaction, citing *Zamarippa v. Cy's Car Sales, Inc.,* 674 F.2d 877, 879 (11th Cir.1982). Also, it contends that it is unfair to allow such remedies to debtors in bankruptcy, who will be incapable of complying with *their* obligations if their creditor *does* properly comply with *its* obligations, *citing In re Pitre,* 11 B.R. 777, 780 (Bankr. N.D.Ill.1981).

We note that the language referenced in *Pitre* is dicta, recited after the court held that the transactions in issue were business transactions beyond the scope of the TILA. *Id.* Moreover, we cannot agree with this dicta because it is contrary to the language of the TILA. It is only "[u]pon the performance of the creditor's obligations under this section" to, *inter alia,* terminate the security interest taken in the obligor's residence, that the obligor's duty to tender performance arises. *See Celona v. Equitable Nat'l Bank,* 98 B.R. 705, 707–08 (E.D.Pa.1989); *Aquino v. Public Finance Consumer Discount Co.,* 606 F.Supp. 504, 507–09 (E.D.Pa.1985); *Tucker, supra,* 74 B.R. at 933; and *In re Piercy,* 18 B.R. 1004, 1007 (Bankr.W.D.Ky.1982).

*Zamarippa* is clearly cited out of context. The language cited merely restates the principle, codified at 15 U.S.C. § 1640(g), that multiple disclosure violations in a single TILA disclosure statement give rise to only a single recovery. *Zamarippa* does not involve a rescission, and in no sense purports to limit the several consequences of a creditor's failure to timely honor a valid rescission, all of which are expressly set forth in 15 U.S.C. § 1635(b). It is also well-established that the refusal to honor the valid rescission is a violation separate from the violation which justified the rescission, thus justifying a separate statutory penalty if suit is initiated within one year from the rescission. *See, e.g., Aquino, supra,* 606 F.Supp. at 609–11; *Bookhart v. Mid–Penn Consumer Discount Co.,* 559 F.Supp. 208, 212 (E.D.Pa. 1983); *Reid v. Liberty Consumer Discount Co.,* 484 F.Supp. 435, 441 (E.D.Pa. 1980); *Tucker, supra,* 74 B.R. at 932; and

*In re Wright,* 11 B.R. 590, 595 (Bankr. S.D.Miss.1981).

### 4. THE DEBTORS ARE ENTITLED TO REDUCE BENEFICIAL'S CLAIM TO AN UNSECURED CLAIM FOR THE BALANCE OF THE UNPAID LOAN PROCEEDS, LESS A $1,000 RECOUPMENT, PLUS RECOVER STATUTORY DAMAGES OF $1,000 AND ATTORNEYS' FEES.

■ The Debtors are therefore entitled to much of the relief which they seek. Beneficial's security interest in the Home must be satisfied. All finance charges "and other charges," including the $60 in filing fees and costs and $145.35 charged for credit insurance, must be eliminated. Credit for the $2,006 payments made by the Debtors since June 8, 1989, brings the Debtors' unsecured liability down to $2,688.65. This figure is further reduced by a $1,000 TILA statutory damage recoupment, 15 U.S.C. § 1640(a)(2)(A)(i), to $1,688.65. Moreover, the Debtors are entitled to $1,000 in statutory damages from Beneficial in light of its refusal to honor their valid rescission, plus reasonable attorneys' fees. *Id;* and 15 U.S.C. § 1640(a)(3). *See generally Brown, supra,* 134 B.R. at 145–47; *Brown, supra,* 106 B.R. at 861–63; and *Tucker, supra,* 74 B.R. at 932–34.

■ However, we stop short of allowing the Debtors to eliminate their indebtedness to Beneficial entirely or requiring Beneficial to repay the payments already made by the Debtors to it. We do agree that such remedies are supportable under the language of § 1635(b) and are appropriate in certain instances. *See Gill v. Mid–Penn Consumer Discount Co.,* 671 F.Supp. 1021, 1026 (E.D.Pa.1987), *aff'd,* 853 F.2d 917 (3d Cir.1988); *In re Gurst,* 79 B.R. 969, 979 (Bankr.E.D.Pa.1987), *appeals dismissed,* C.A. No. 88–2092 (E.D.Pa. August 9, 1988), *aff'd,* 866 F.2d 1410 (3d Cir.1988); and 88 B.R. 57 (E.D.Pa.1988); and *Tucker, supra,* 74 B.R. at 933.

However, we also believe that the last sentence of § 1635(b) and 12 C.F.R. § 226.-15(d)(4) provide us with statutory authority to confine such harsh remedies to situations where creditors have tried to deceive or cheat the consumer. *See Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F.Supp. 1295, 1307 (D.Del.1990); *Mayfield v. Vanguard Federal Savings & Loan Ass'n,* 710 F.Supp. 143, 148 (E.D.Pa. 1989); and *Gurst, supra,* 79 B.R. at 979. We fail to detect any serious overreaching or improper conduct, over and above the commission of substantial TILA violations, by Beneficial in the instant transaction. We also recognize that the reclassification of Beneficial's claim to unsecured is tantamount to finding that it need not be paid any balance in the context of the low-income Debtors' Chapter 13 case, which promises to pay little if anything to unsecured creditors, but nevertheless result in the Debtors' discharge. *See Brown, supra,* 134 B.R. at 145; *Tucker, supra,* 74 B.R. at 932; *In re Chancy,* 33 B.R. 355, 356–57 (Bankr.N.D.Okla.1983); *Piercy, supra,* 18 B.R. at 1007–08; and *Wright, supra,* 11 B.R. at 595.

### 5. THE DEBTORS ARE ENTITLED TO AVOID BENEFICIAL'S LIEN IN THEIR HOUSEHOLD GOODS.

■ One final issue remains: resolution of the Debtors' Motion to avoid Beneficial's non-possessory, non-purchase-money security interest in their various household furnishings. This relief is plainly justified under 11 U.S.C. § 522(f)(2). Moreover, we believe that this additional Motion is necessary to avoid these security interests, because 12 C.F.R. § 226.15(d)(1) provides that, in the case of a valid rescission, only "the security interest giving rise to the right of rescission becomes void." In the instant transaction, would only effect avoidance of Beneficial's mortgage against the Home. We might note that, because of this language in § 226.15(d)(1) and the well-established principle that motor vehicles are not "household goods," *see In re Smith,* 29 B.R. 345, 346 (Bankr.M.D.Pa. 1983); and *In re Abt,* 2 B.R. 323, 325–26 (Bankr.E.D.Pa.1980), the Debtors would have been unable to avoid Beneficial's lien against the Vehicle, if they still possessed

it. However, Beneficial's Record of Payments reflects the disposal of the Vehicle and the credit of the Debtors' account with the sale proceeds.

We assume that this decision will render the Debtors' Chapter 13 Plan "feasible" and "confirmable." However, this court's unavailability on March 24, 1992, prompts us to allow the Debtors until March 27, 1992, to file any appropriate Amended Plan before scheduling a *final* confirmation hearing on April 7, 1992.

### E. CONCLUSION

An Order granting substantial relief to the Debtors, in accordance with this Opinion, will be entered.

### ORDER

AND NOW, this 1st day of March, 1992, upon consideration of a Joint Pretrial Statement including a Stipulation of facts which the parties agreed would constitute the record upon which we could decide the Debtors' Motion to Avoid the Nonpossessory, Nonpurchase-money Security Interest of Defendant BENEFICIAL CONSUMER DISCOUNT CO. ("Beneficial") in the above-captioned main bankruptcy case, and the above adversary proceeding; and upon careful consideration of the parties' respective Briefs, it is ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff–Debtors, CHRISTOPHER and JULIE MICHEL ("the Debtors"), and against Beneficial in part, as described in the foregoing Opinion.

2. It is DECLARED that the Debtors properly exercised their right to rescind the parties' Credit Line Account Agreement of June 8, 1989, and that therefore this Agreement is deemed properly rescinded by the Debtor.

3. Beneficial is directed to satisfy the mortgage which it has taken against the Debtors' residential real estate at 5036 "F" Street, Philadelphia, Pennsylvania 19124, within fifteen (15) days from the date of this Order.

4. The Claim of Beneficial is REDUCED and RECLASSIFIED as an unsecured claim in the amount of $1,688.65.

5. Beneficial shall pay the sum of $1,000 to Defendant EDWARD SPARKMAN, the Standing Chapter 13 Trustee ("the Trustee"), as damages pursuant to 15 U.S.C. § 1640(a)(2)(A)(i). The said Trustee shall determine whether this sum may be claimed as part of the Debtors' exemptions, and, if it may be, he shall forward this sum to the Debtors forthwith.

6. Beneficial's security interests in the Debtors' television sets, radios, stereo system, VCR, and other household goods and furnishings are AVOIDED.

7. The parties are urged to attempt to agree upon reasonable attorneys' fees and costs which are due to the Debtors' counsel, pursuant to 15 U.S.C. § 1640(a)(3). If this matter is not resolved within fifteen (15) days, the Debtors' counsel may, within thirty (30) days of this Order, file a Motion requesting a court award of such fees, said Motion to be procedurally in conformity with *In re Meade Land & Development Co.*, 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates*, 78 B.R. 41 (Bankr. E.D.Pa.1987). However, if the Debtors' counsel has made a reasonable request for such fees which is refused, said counsel may recover compensation for time spent on the fee application.

8. The Debtors shall file, on or before March 27, 1992, any Amended Plan which they deem necessary and appropriate in light of this Opinion to achieve confirmation of a Chapter 13 Plan of Reorganization.

9. A final hearing on confirmation and the Trustee's Motion to Dismiss the Debtors' main case is rescheduled on

THURSDAY, APRIL 7, 1992, at 9:30 A.M.

and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

10. No further continuances of the confirmation hearing will be favored.